## THE STATE OF INDIANA *v.* WELLER.

[No. 21,252. Filed October 13, 1908.]

1. STATUTES.—*Interpretation.*—The purpose of the interpretation of a statute should be to ascertain the general intent thereof, effect being given to every word, if possible; and such a construction should be avoided as will make a proviso plainly repugnant to the body of the act. p. 56.

2. WORDS AND PHRASES.—*"Middlings."—Statutes.*—The word "middlings," as used in §7949 Burns 1908, Acts 1907, p. 354, §11, providing that the term "concentrated commercial feeding stuff" shall include "wheat middlings," imports that part of the wheat grain left after separating the coarser bran and the finer flour therefrom. p. 56.

3. STATUTES.—*Pure Food.—Labels.—Whole Wheat Products.— "Middlings."*—The requirement in §7949 Burns 1908, Acts 1907, p. 354, §11, that "concentrated commercial feeding stuff," the retailers of which are required properly to label the same, shall include "wheat middlings" does not conflict with a later clause therein that it shall not include "unmixed meals made directly from the entire grains of wheat." p. 57.

4. INDICTMENT AND INFORMATION. — *Exceptions. — Negativing. — When Required.*—Where an exception in a statute is closely connected with the enacting clause, or is in the same section defining the offense, it must be negatived in the indictment; but if it occur in a subsequent clause or statute, it constitutes a defense and need not be negatived. p. 57.

5. SAME.—*Sale of "Concentrated Commercial Feeding Stuff" Without Label.—Statutes.*—An indictment, under §7944 Burns 1908, Acts 1907, p. 354, §6, charging that defendant unlawfully sold "wheat middlings" without a label, and negativing the exceptions therein contained, sufficiently charges the offense therein described of retailing "concentrated commercial feeding stuff" without a label. p. 58.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Prosecution by The State of Indiana against Henry Weller. From a judgment quashing the affidavit, the State appeals. *Reversed.*

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White* and *William H. Thompson,* for the State.

*Forrest E. Hughes* and *Ethan L. Arnold,* for appellee.

MONTGOMERY, J.—Appellee was charged by affidavit, in two counts, with violating the tag and label provisions of the concentrated commercial feeding-stuff law of 1907 (Acts 1907, p. 354, §§7939-7949 Burns 1908). The body of the first count was as follows: "That on or about the 4th day of January, 1908, at the county of Elkhart and State of Indiana, one Henry Weller did then and there unlawfully offer and expose for sale to one Herbert Judson a certain quantity of concentrated commercial feeding stuff, to wit, two sacks, containing about seventy pounds each, of wheat middlings, the exact weight of which sacks of wheat middlings, or either of them, is unknown to this affiant; that said Henry Weller did not then and there affix or cause to be affixed, and there not being then affixed, to said sacks of wheat middlings, or either of them, any tag, label or stamp, as provided by chapter 206 of the acts of 1907 [*supra*], of the General Assembly of Indiana; that said wheat middlings were not then and there being offered by said Henry Weller for sale or shipment in bulk to importers, manufacturers or manipulators engaged in mixing concentrated commercial feeding stuffs for sale; he, the said Henry Weller, not being then and there the Indiana state chemist, or authorized or deputized thereby, or by the Indiana agricultural experiment station, or engaged in experimenting with concentrated commercial feeding stuffs for the advancement of the science of agriculture."

The second count charged a sale to Herbert Judson for the price of $1.96.

Each count of the affidavit was quashed on appellee's motion, and these rulings are assigned as error upon this appeal.

Section two of the act upon which this prosecution is founded (§7940, *supra*), provides that any person who shall sell, or offer, or expose for sale, any concentrated commercial feeding stuff in this State shall affix or cause to be

affixed to every package thereof a tag or label containing certain specified facts.

Section six of the act (§7944, *supra*) declares that any person, who shall offer for sale, sell or expose for sale, any package, sample, or quantity of concentrated commercial feeding stuff which does not have affixed to it the tag and stamp required by section two of the act, shall be deemed guilty of a misdemeanor, and on conviction thereof be fined in a specified sum; provided, "that nothing in this act shall be construed to restrict or prohibit the sale of concentrated commercial feeding stuff in bulk to each other by importers, manufacturers or manipulators who mix concentrated commercial feeding stuff for sale, or as preventing the free, unrestricted shipment of these articles in bulk to manufacturers or manipulators who mix concentrated commercial feeding stuff for sale, or to prevent the state chemist, or the Indiana agricultural experiment station, or any person or persons deputized by said state chemist, making experiments with concentrated commercial feeding stuffs for the advancement of the science of agriculture."

Section eleven (§7949, *supra*) provides that the term "concentrated commercial feeding stuff," as used in the act, shall include, among other things, "wheat bran, wheat middlings, wheat shorts and other mill by-products not included in this section," and concludes: "But it shall not include straw, whole seeds, unmixed meals made directly from the entire grains of wheat, rye, barley, oats, Indian corn, buckwheat and broom-corn, nor wheat flours or other flours."

The decision of the lower court is defended by appellee's counsel upon the ground (1) that wheat middlings are products of the whole grain, and are expressly excluded from the definition, given in section eleven, of "concentrated commercial feeding stuff;" (2) that the affidavit should have alleged that the products mentioned, wheat middlings, were

not "straw, whole seeds, or unmixed meals made directly from the entire grains of wheat," etc.

We have already seen that §7949, *supra,* expressly declares that "wheat middlings" are included in the term "concentrated commercial feeding stuff," but "unmixed meals, made directly from the entire grains of wheat," are not included. The contention of appellee's counsel is that the latter clause covers "wheat middlings," and takes that product out of the class of feeding stuffs required to be tagged, notwithstanding the fact that it is specifically named as within the class covered by the act.

The cardinal rule in the interpretation of a statute is to ascertain and give effect to the general intent of the act, if that can be discovered. Effect should be given to

1. every word and clause, and, if possible, such a construction avoided as will make a proviso plainly repugnant to the body of the act.

In the Century Dictionary we find the following upon the subject of "middlings:" "In milling, the parts of a kernel of grain next the skin of the berry, largely composed

2. of gluten and considered the most nutritious part. In the older methods of milling this was ground as fine as possible together with the starchy part and the bran, and then the whole was bolted to separate the bran. By the newer high-milling methods, the middlings are passed through a purifying machine and reground, forming a very fine flour, with larger and more uniform granules than that from the first grinding." Also, "The coarser particles resulting from milling, intermingled with a certain quantity of bran and foreign matters, used as feed for farm stock."

In Webster's International Dictionary, "middlings" are defined as "a combination of the coarser parts of ground wheat with the finest bran, separated from the fine flour and coarse bran in bolting; formerly regarded as valuable only for feed, but now, after separation of the bran, used for making the best quality of flour."

In the Standard Dictionary it is said that "middlings" are "The coarser part of ground wheat, as distinguished from flour and bran."

It is manifest from these definitions that "wheat middlings" consist of only a part of the ground grains, from which at least the coarser bran, and usually the finer flour, have been separated. The quality and value of middlings as feeding stuff would therefore vary and depend upon the milling process of the manufacturer in any given case. This fact furnishes the reason for requiring the manufacturer, importer or dealer to file with the state chemist a sworn statement of the ingredients of his concentrated commercial feeding stuff, and of the name, brand or trademark under which it will be sold, and to obtain official certificates and tags, as provided in the act, which guarantee to purchasers the contents and purity of the article. If an unmixed meal be made from the entire grains of wheat, the ingredi-

3. ents would be the same, regardless of the manufacturer or the mill in which it was made, and no substantial reason could be advanced for requiring registration of the product. It is clear that "wheat middlings," a by-product containing only certain particles of the grains of wheat, are not the same as a meal containing the entire substance and all parts of the ground grains, and there is no repugnance in this respect in the act, but wheat middlings constitute a concentrated commmercial feeding stuff within the meaning of the statute, and must be tagged, as required thereby, before being sold, or offered or exposed for sale.

"The law in relation to exceptions in a statute is, that if the exception be contained in a subsequent clause or statute, it is a matter of defense, and need not be negatived

4. in the indictment; but if it be closely connected with the enacting clause, or if it be in the same clause of the act which creates the offense, it is necessary to show by negative averment, that the defendant is not within the exception." Gillett, Crim. Law (2d ed.), §132a.

It appears from the affidavit before set out that each of the provisos or exceptions contained in §7944, *supra,* which creates and defines the offense, was specifically negatived, and no question of the sufficiency of the pleading thus far is made by appellee's counsel. Section 7949, *supra,* does not purport to create or define the crime, but, as an aid to the interpretation and application of the act, furnishes a definition of the term "concentrated commercial feeding stuff," and specifies what is and what is not included within the meaning of that term. The affidavit having sufficiently charged an offer to sell, and a sale of, an untagged package of feeding stuff, specifically named, as within the terms of the act, it was not necessary to allege that such feeding stuff was not one of the class expressly excluded. *Colson* v. *State* (1845), 7 Blackf. 590; *Alexander* v. *State* (1874), 48 Ind. 394; *State* v. *Maddox* (1881), 74 Ind. 105; *Mergentheim* v. *State* (1886), 107 Ind. 567; *Ferner* v. *State* (1898), 151 Ind. 247; *Crawford* v. *State* (1901), 155 Ind. 692; *Isenhour* v. *State* (1901), 157 Ind. 517; *Tomlinson* v. *Bainaka* (1904), 163 Ind. 112. The affidavit is sufficient as against the objections advanced by appellee's counsel.

No constitutional question has been presented or considered in connection with this appeal.

The judgment is reversed, with directions to overrule the motion to quash each count of the affidavit, and for further proceedings.