MORRISON ET AL. *v.* STATE OF INDIANA, EX REL. IN-DIANAPOLIS FREE KINDERGARTEN AND CHIL-DRENS AID SOCIETY.

[No. 22,327.    Filed April 30, 1914.]

1. STATUTES.—*Construction.—Legislative Intent.*—In the construction of a statute, courts should give effect to the legislative intent, and in seeking such intent effect should be given, if possible, to every word and clause, and the words and phrases used are to be given their ordinary, plain and usual meaning, unless a contrary purpose is clearly manifested.    p. 549.

2. STATUTES.—*Construction.—Legislative Intent.*—In ascertaining the legislative intent in a statute, the court may in doubtful cases resort to the history of the enactment.    p. 549.

3. STATUTES.—*Construction of Words.—"Shall."—"May."*—In the construction of a statute, the word "shall" may be given the meaning of the word "may," and *vice versa,* but the ordinary meaning of either word must be accorded, unless a defeat of the legislative intent would otherwise result.    p. 549.

4. STATUTES.—*Construction.—Provisos.*—The rational and appropriate function of a proviso in a statute is to restrain and qualify the preceding clause or clauses in the section in which it is found; but, if it is manifest that the legislature intended to give the proviso a scope beyond such section, it may be held as modifying a preceding one.    p. 550.

5. SCHOOLS AND SCHOOL DISTRICTS.—*Taxation.—Levy for Kindergartens.—Construction of Statute.*—The act of 1901 (Acts 1901 p. 123) as amended in 1911 (Acts 1911 p. 112, §§6484, 6485 Burns 1914), providing for the levy of taxes for the support of free kindergarten schools, is discretionary as applied to school cities of less than 100,000 population, and mandatory as applied to those of greater population.    p. 550.

6. STATUTES.—*Construction.*—It is presumed that the legislature intends the several provisions of an act to combine in a harmonious whole, hence courts should, if possible, harmonize apparent conflicts between the several provisions of an act under consideration.    p. 551.

7. SCHOOLS AND SCHOOL DISTRICTS.—*Taxation.—Levy for Kinder-gartens.—Construction of Statute.*—The fact that there may not be, in a city of more than 100,000 population, an association qualified to receive money from a tax levy pursuant to the act of 1901 (Acts 1901 p. 123), as amended in 1911 (Acts 1911 p. 112, §§6484, 6485 Burns 1914), providing for the levy of taxes for the support of free kindergarten schools, affords no ground for holding that the provisions of the act are discretionary in its application to such cities, since if there were no object to which the tax could be applied there would be no power, either discretionary or mandatory, to levy the tax. p. 551.

8. SCHOOLS AND SCHOOL DISTRICTS.—*Taxation.—Levy for Kinder-gartens.—Statutes.—Legislative Construction.*—The act approved March 1, 1909 (Acts 1909 p. 89), intended to remove doubts concerning certain named statutes, does not include the act of 1901 (Acts 1901 p. 123), relating to the levy of taxes for the support of kindergarten schools and makes no attempt to place a legislative construction thereon. p. 551.

9. STATUTES.—*Repeals by Implication.*—Repeals, modifications and amendments of statutes by implication are not favored, and will not be upheld in doubtful cases. p. 552.

From Marion Circuit Court (20,821); *Charles Remster,* Judge.

Action for mandate by the State of Indiana, on the relation of the Indianapolis Free Kindergarten and Childrens Aid Society, against Frank A. Morrison and others, as members of the Board of School Commissioners of the School City of Indianapolis. From a judgment for relator, the defendants appeal. *Affirmed.*

*Albert Baker,* for appellants.

*A. C. Ayres* and *John B. Elam,* for appellee.

MORRIS, C. J.—Action for mandate by appellee, against appellants, as members of the Board of School Commissioners of the School City of Indianapolis. The complaint was filed in December, 1911, and alleges that relator is a corporation organized under the laws of Indiana, with its place of business in the city of Indianapolis; that it is, and has been, for more than ten years, engaged in maintaining

and conducting more than twelve free kindergarten schools in Indianapolis, which schools have been and are designated and approved by the superintendent of schools of said city; that by virtue of the provisions of the act of 1901, as amended in 1911 (Acts 1901 p. 123; Acts 1911 p. 112, §§6484, 6485 Burns 1914), it became the duty of appellants, not later than the first Monday in October, 1911, to levy a tax of two cents on each $100 of taxable property in Indianapolis, for the support and maintenance of free kindergarten schools in said city; that appellants failed and refused to levy such tax, and instead thereof levied a tax of one cent only on such property; the plaintiff prays for an order mandating appellants, in making the levy of 1912, to levy a tax of two cents on each $100 of the city's taxable property. Appellants filed an answer to the complaint, in which they set out the history of the act of 1901, and aver that the statute, as amended in 1911, is authorizing and empowering, but not mandatory, as respects the amount of any levy that may be made by appellants in 1912. A reply was filed to the answer, to which appellants demurred. This demurrer was carried back and sustained to appellants' answer, and, appellants declining to plead further, judgment was rendered for appellee.

It is conceded by the parties that if the kindergarten act is mandatory in regard to the levy of a two cent tax in school cities having a population of more than 100,000, the judgment should be affirmed, and otherwise, it should be reversed. The act of 1901 (Acts 1901 p. 123), together with its title, reads as follows: "An act to *require* the levying of a tax in cities having a population according to the latest United States census, of more than six thousand, for the support of Free Kindergarten Schools and for the appropriation of the funds so raised and declaring an emergency. (H. 295. Approved March 6, 1901.) Section 1. Be it enacted by the general Assembly of the State of Indiana, That in any city having a population according to

the latest United States census of over six thousand, the board of school commissioners, or school trustees *may* in fixing the annual levy of taxes for school purposes include therein *one cent* on each one hundred dollars of valuation [*in addition to the tax now authorized*] for the purpose of providing a fund for the support of free kindergarten schools in said city. Section 2. The tax so levied shall be collected as the other taxes for school purposes in such city are collected and shall be disbursed by the county treasurer as other school funds raised by local taxation are disbursed; and said free kindergarten fund shall be applied to the aid, maintenance and support of free kindergarten schools conducted by any association incorporated for that purpose having the approval of and designated by the superintendent of schools of said city, and said fund shall be from time to time paid over to said association for such use upon the written order of said superintendent directed to said county treasurer: *Provided, That in cities having a population of more than one hundred thousand according to the last preceding United States census,* SUCH TAX SHALL BE LEVIED AND *such association shall not receive such funds unless for more than two years next preceding it shall have maintained at least twelve such free kindergarten schools.* Section 3. Whereas, an emergency exists for the immediate taking effect of this act, therefore, the same shall be in force from and after its passage." (Italics, brackets, and capitals, ours).

In 1911, §1, of the foregoing act, was amended. Acts 1911 p. 112. The only change made was by increasing the amount of levy from one cent to two cents, and by eliminating the clause we have enclosed in brackets. The original bill for the act of 1901, known as "House Bill No. 295," including title, and excluding emergency clause, read as follows: "An act to require the levy of a tax in cities having a population, according to the last United States census, of more than one hundred thousand, for the support of

free kindergarten schools, and for the appropriation of the funds so raised, and declaring an emergency. Section 1. Be it enacted by the General Assembly of the State of Indiana, That in any city having a population, according to the latest United States census, of over 100,000, it shall be the duty of the board of school commissioners in fixing the annual levy of taxes for school purposes to include therein one (1) cent on each $100.00 of valuation in addition to the tax now authorized for the purpose of producing a fund for the support of free kindergarten schools in said city. Sec. 2. The tax so levied shall be collected as the other taxes for school purposes in such city are collected and shall be disbursed by the county treasurer as other school funds raised by local taxation are disbursed; and said free kindergarten fund shall be applied to the aid, maintenance and support of free kindergarten schools conducted by any association incorporated for that purpose having the approval of and designated by the superintendent of schools of said city, and said fund shall be from time to time paid over to said association for such use upon the written order of said superintendent directed to said county treasurer." Later, in the House, the number 100,000, in the title and first section, was changed to 8,000. Up to this point, appellants concede that the language was mandatory in regard to the levy. So amended, the bill was adopted by the House. In the Senate, an amendment was adopted, inserting in §1, after the word "commissioners" the words "or school trustees." Later, the section was further amended by striking out the phrase "it shall be the duty of," and inserting the word "may" after the word "trustees," and by striking out the word "to," occurring after the word "purposes." At this point it is manifest that it was the purpose of the Senate to make the levy permissive rather than mandatory. Still later, Senator Matson of Marion County offered the following amendment, to be added at the end of §2: "Provided that in cities hav-

ing a population of more than 100,000 according to the last preceding United States census, such association shall not receive such funds, unless for more than two years next preceding it shall have maintained at least twelve such free kindergarten schools.'' This amendment was adopted. The bill and title were further changed by substituting 6,000 for 8,000, as the minimum population. Subsequently, on March 1, 1901, Senator Matson moved that the bill be referred to a committee of one with instructions to amend, by inserting after the word ''census,'' in the proviso in §2, the words *''such tax shall be levied and''*. The motion carried, and the bill was so amended and passed. The House later concurred in the Senate amendments and the bill became a law.

By reason of the use of the word ''may'' in §1 of the act, appellants contend that the power to levy the tax was intended to be discretionary with boards of all school cities contemplated by the act, while appellee claims that because of the words ''such tax shall be levied and'', found in the proviso of §2, which clause constituted the last amendment made to the bill, it must be held that as to school cities with a population of over 100,000, a mandatory duty was enjoined on the board to levy the tax.

In construing statutes courts must give effect, when ascertained, to the legislative intent. In seeking such intent, effect must be given, if possible, to every word and

1.  clause of the act. *State* v. *Weller* (1908), 171 Ind. 53, 85 N. E. 761. Words and phrases must be given their plain, ordinary and usual meaning, unless a contrary purpose is clearly manifested. §240 Burns 1914, §240 R. S. 1881. It is proper in doubtful cases, to resort

2.  to the history of the enactment of a statute to discover the legislative intent. *Stout* v. *Board, etc.* (1886), 107 Ind. 343, 8 N. E. 222. The word ''shall''

3.  may be given the meaning of the word ''may'', and *vice versa,* but the ordinary meaning of either word

must be accorded, unless a defeat of the legislative intent would otherwise result. *Terry* v. *Byers* (1903), 161 Ind.

4. 360, 68 N. E. 596. The rational and appropriate function of a proviso is to restrain and qualify the preceding clause or clauses in the section in which it is found, yet, where it is manifest that. the legislature intended to give the proviso a scope beyond such section, it may be held as modifying a preceding one. *Stiers* v. *Mundy* (1910), 174 Ind. 651, 92 N. E. 374; *Murray* v. *Gault* (1913), 179 Ind. 658, 101 N. E. 632; *Interstate Com. Com.* v. *Baird* (1904), 194 U. S. 25, 24 Sup. Ct. 563, 48 L. Ed. 860, and cases cited; *Georgia R., etc., Co.* v. *Smith* (1888), 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377. In the case last cited it was said on page 181: "The general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute, or from some provisions of it, or to qualify the operation of the statute in some particular. But it is often used in other senses. It is the common practice in legislative proceedings, on the consideration of bills, for parties desirous of securing amendments to them, to precede their proposed amendments with the term 'provided,' so as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail, thus having no greater signification than would be attached to the conjunction 'but' or 'and' in the same place, and simply serving to separate or distinguish the different paragraphs or sentences."

We are of the opinion that it was the legislative intent, on the final adoption of the act, to make the levy discretionary in all school cities with a population under

5. 100,000, and mandatory in those of a greater population. Such construction does not require the wrenching of the words "may" and "shall" from their plain, ordinary meaning, and gives effect to the manifest purpose of the Senate in adopting the last amendment to the bill, by

inserting the phrase "such tax shall be levied and". It is the duty of courts, if possible, to harmonize apparent

6. conflicts between the several provisions of an act under consideration, because it must be presumed that the legislature intended the several provisions

7. to combine into a harmonious whole. Appellants insist that such construction may lead to absurd consequences, because, if the levy is held mandatory, it might happen that the board would be compelled to make a levy when there may be no object to which the tax can be applied; that appellee may surrender its charter, and abandon its work, or it may not be designated or approved by the superintendent, and no other corporation may attempt the work. It is quite true that such contingency may arise, and if it does there would be no reason for holding a levy either discretionary or mandatory. It cannot be said that it was the legislative purpose even to authorize the levy of a tax in the absence of a lawful object to which it could be applied. The law does not require impossibilities or contemplate absurdities, and no board could justly plead a discretionary power to levy a tax which could not be lawfully used. It cannot be held that it was intended by the act to confer on any school board the power, discretionary or otherwise, to levy such tax, unless there shall exist some association for the maintenance of kindergarten schools, qualified under the provisions of §2, to perform the contemplated services. It was further intended in cities with more than 100,000, to withhold aid from associations which do not maintain as many as twelve schools, and the wisdom for such restriction is apparent.

Appellants claim that the General Assembly of 1909, by its act approved March 1 (Acts 1909 p. 89) construed said act of 1901 as conferring a discretionary power on

8. the Indianapolis school board to levy the kindergarten tax. Our attention is especially called to the

word "authorizing" found in a paragraph (p. 93) reading as follows: "A sum not exceeding one (1) cent, the proceeds of which levy shall be known as the 'kindergarten fund', which tax *shall be levied* and the proceeds thereof applied only as provided by the statute of the State of Indiana, approved March 6, 1901 (Acts 1901 p. 123), *authorizing* the levy of such tax and providing for the application of the proceeds thereof:" (Italics ours). The preamble of the above act recites the purpose of its enactment to be to remove doubts concerning certain named statutes, but which do not include the act of 1901. It is claimed by appellants, that if it be conceded that the act of 1901, should, previous to the enactment of 1909, have been properly construed as conferring mandatory power on the board, yet, after the legislative construction, the courts are bound by it. We do not consider appellants' proposition relating to the effect of a subsequent legislative construction, for the reason that we are of the opinion, that the provisions of the act of 1909, *supra,* do not warrant the conclusion that the General Assembly intended, by said act of 1909, to place any legislative construction on the act of 1901. Repeals, modifications and amendments 9. of statutes by implication are not favored, and will not be upheld in doubtful cases. We fail to find any clear intention manifested in the act of 1909 to place any construction on the act of 1901.

Counsel for appellants, in their brief, which reveals great learning and research, call our attention to many rules of construction other than those noted in this opinion, and cite many authorities in support of such rules. In view of the conclusion reached, we deem it unnecessary to discuss these rules and authorities, for we are of the opinion that the legislative intent in the act is manifested with such clearness as to render resort to such rules unnecessary. There was no error in the ruling of the trial court. Judgment affirmed.

NOTE.—Reported in 105 N. E. 113. As to the rules of construction in respect of statutes, see 12 Am. St. 827. As to the construction of the words "may" and "shall" occurring in the same statute, see 4 Ann. Cas. 420. See, also, under (1) 36 Cyc. 1106, 1114, 1128; (2) 36 Cyc. 1138; (3) 36 Cyc. 1160; (4) 36 Cyc. 1161, 1162; (5) 35 Cyc. 998; (6) 36 Cyc. 1129; (7) 36 Cyc. 1157; (8) 36 Cyc. 1142; (9) 36 Cyc. 1071.