SNIDER ET AL. *v.* STATE EX REL. LEAP ET AL.

[No. 25,919.   Filed May 3, 1934.]

*Clinton H. Givan,* for appellants.

*Johnson & Zechiel* and *William H. Faust,* for appellees.

HUGHES, J.—This was an action for mandamus to compel the county counsel to appropriate, the county commissioners to allow, and the county auditor to issue warrants for the sum of $200.00 for clerk hire for services, the appellee, Leap, rendered in the county clerk's office.

It appears from the complaint that on September 1, 1929, the relator, George O. Hutsell, as clerk of the Marion Circuit Court, prepared and filed his schedule of the number of deputies and assistants necessary to conduct the business of his office which schedule was filed with the defendants, the county council, and at the same time he prepared and attached thereto, the amount of salaries for such deputies and assistants, which sum did not, with respect to anyone of such deputies or assistants, exceed the sum of $200.00 per month; that it was necessary that the relator, George O. Hutsell, in order to conduct his office employ the said Leap as deputy clerk; that the salary of Leap was fixed by said Hutsell at $2,000.00 per year or $166.662/3 per month; that the county council, acting in its official capacity, approved the schedule of the number of deputies and assistants as presented by said Hutsell, but refused to approve the salary attached thereto for said Leap, and fixed the same at $1,800.00 per year, or $150.00 per month; that under the law, the clerk of the Marion Circuit Court is authorized to fix the salaries of his deputies

and that Hutsell, as said clerk, fixed the salary of said Leap which did not exceed $200.00 per month. The complaint further alleges that on the 1st day of January, 1930, the said Hutsell again presented to the defendants a schedule of the number of deputies and assistants necessary to conduct the business of the office, which schedule was approved except the council refused to approve the salaries; that the council has failed and refused to appropriate the money with which to pay said salary to said Leap, as fixed by said Hutsell.

. The relators prayed for a writ of mandate ordering the Marion County Council and the members thereof to meet in a special session and make an additional appropriation of $200.00, payable at the rate of $166.662/3 per month, necessary for the salary of the said Albert Leap, and that Harry Dunn, Auditor of Marion County, be mandated to call said council in special session for the purpose of making said appropriation, and that said Dunn, as auditor, be mandated to pay said Leap the amount due him when the same was appropriated.

The appellants filed a demurrer to the complaint which was overruled and judgment was rendered in favor of appellees after appellants refused to plead further. A decree was entered in favor of appellees ordering the council to appropriate an additional $200.00 for the said Leap, making the total appropriation for said Leap, the sum of two thousand dollars ($2,000.00) for the year ending December 31, 1930.

The errors relied upon by appellants for a reversal are as follows:

(1) That the court erred in overruling the demurrer of the appellants to the appellee's complaint.

(2) That the finding of the court is contrary to law.

(3) That the court erred in entering judgment upon appellee's complaint when the appellants refused to plead further.

The question presented is—Did the county council have the right to refuse to make an appropriation for the requested salaries of the deputies of the county clerk as fixed by him after the schedule of the number of such deputies and assistants had been approved by the council? The answer to this question depends upon the construction of chapter 26, Acts 1927, p. 81, which is an act to amend section 2, of an act approved March 11, 1921, being chapter 274, Acts of 1921, p. 851.

Section 2, as amended by the Acts of 1927 (§7851, Burns Supp. 1929), is as follows:

"At the beginning of his term of office and of each calender year, each official named herein shall make out a schedule of the number of deputies and assistants necessary to conduct the business of his office, with the salaries attached thereto, which schedule shall be first approved by the county council. If more deputies or assistants are needed after said schedule is adopted, any official may make a showing of such necessity, at any time, and such official may be authorized by the county council to employ such needed help. All such deputies and assistants shall be appointed and may be removed by the county official under whom such deputies and assistants shall serve: Provided, however, That no deputy shall receive a salary to exceed two hundred dollars per month for the time actually employed except the deputy prosecuting attorney assigned to the grand jury room, the chief deputy prosecuting attorney, chief deputy auditor, chief deputy clerk, chief deputy sheriff and the cashier of the county treasurer, who may receive a salary of not to exceed three thousand dollars per year, and the chief deputy treasurer, who may receive a salary not to exceed four thousand dollars per year."

This amended section is the same as §2 of the Act of 1921, except as to the amount of the salaries as contained in the proviso.

It is a rule of statutory construction that "courts must give effect, when ascertained, to the legislative

intent. In seeking such intent, effect must be given, if possible, to every word and clause of the act. Words and phrases must be given their plain, ordinary, and usual meaning, unless a contrary purpose is clearly manifested." *Morrison* v. *State* (1913), 181 Ind. 544, 549, 105 N. E. 113; *State* v. *Weller* (1908), 171 Ind. 53, 56, 85 N. E. 761. And "we are required as a primary rule of construction to put ourselves in the position of the legislature in the enactment of statutes, and endeavor to arrive at its intention." *State* v. *Barrett* (1908), 172 Ind. 169, 175, 87 N. E. 7.

The act says: "Each official named herein shall make out a schedule of the number of deputies and assistants necessary to conduct the business of his office, with the salaries attached thereto, which schedule shall be first approved by the county council."

What was the legislative intent in enacting the foregoing section? When we give to the words of the act their plain, ordinary, and usual meaning must we not come to the inevitable conclusion that the county council had the right to fix the number of deputies and assistants and also to appropriate such an amount as it thought was necessary for deputies and assistants? The act in plain and ordinary language says that the schedule shall be *first* approved by the county council. What schedule? Plainly, the schedule containing the number of deputies and assistants and the salaries attached thereto. And this schedule must first be approved by the county council. When the sentence is properly analyzed it means in ordinary and common sense language that the officer at the beginning of his term of office and of each calendar year shall make out, (1) a schedule of the number of deputies and assistants necessary to conduct the business of his office, and (2) a schedule of the salaries, and these schedules shall be first approved by the county council. If there is

any meaning at all to be given the word "approval" it must be that the council must approve the salaries as well as the number of appointees.

In appellees' brief the question is asked: "Must it be assumed as a matter of government efficiency and propriety that the county council has more judgment and sense with respect to the clerk's requirements than the clerk himself may have?" This question can best be answered by citing the act creating the county council. The evident purpose of the act was to create a body to act as a check on the business of the county and including the expenditures made by all county officers. The power of fixing tax rates and making appropriations was given exclusively to the county council and the intent of the act was to place limits and checks upon payments out of the treasury, and not to extend or increase them. It was not a question as to whether the county council or a county officer had the better judgment, but the legislature evidently thought when it created the body known as the county council, and clothed it with certain powers, that the exercise of those powers would be beneficial to the general public and especially to the taxpayers in providing a check on the expenditure of public money.

It is expressly provided in section 5881, Burns 1926, §26-520, Burns 1933, §5384, Baldwin's 1934, that "the council shall have full power to require any estimate not sufficiently itemized to be itemized by the person who prepared the same, and *to appropriate for any purpose a sum not greater than that estimated in the item therefor.*" (Our italics.) So in the instant case the clerk itemized the salary for the relator, Leap, the sum of $2,000.00 per year or $166.66 2/3 per month. Under the statute the county council had the power to appropriate this amount, but it was not compelled to do so. The legislature put a limit beyond

which it could not go, but left to it a discretion as to the amount it would in good faith appropriate.

There is no charge of fraud, arbitrary power, or bad faith on the part of the county council in limiting the appropriation in the instant case to $1,800 per year or $150.00 per month for the relator, Albert Leap, and as long as these elements are lacking we are of the opinion that the county council was clearly within its rights in making the appropriation as it did in the instant case.

Judgment reversed.