**Jay K. WALTERS, Grant County Assessor, Appellant–Plaintiff,**

v.

**THE GRANT COUNTY COUNCIL, The Board of Commissioners of the County of Grant; and Michael Burton, Grant County Auditor, Appellee–Defendant.**

No. 27A02–0408–CV–667.

Court of Appeals of Indiana.

Jan. 27, 2005.

Marilyn S. Meighen, Meighen & Associates, PC, Carmel, IN, Attorney for Appellant.

Phillip E. Stephenson, Spitzer Herriman Stephenson Holderead Musser & Conner, LLP, Marion, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Grant County Assessor Jay K. Walters appeals the trial court's grant of summary judgment in favor of the Grant County Council, the Grant County Board of Commissioners, and the Grant County Auditor (collectively referred to as "the Council") in Walters's declaratory judgment action seeking to compel the Council to appropriate funds from the Property Assessment Fund upon Walters's recommendation. Walters presents one issue for our review: Did the trial court err in granting the Council's summary judgment motion?

We affirm.[1]

The undisputed facts establish that in July 2003, pursuant to Indiana Code Ann. § 6–1.1–4–27.5, (West, PREMISE through 2004 2nd Regular Sess.),[2] the Department of Local Government Finance imposed a

---

1. We hereby deny the Council's motion for oral argument.

2. I.C. § 6–1.1–4–27.5 provides as follows:

(a) The auditor of each county shall establish a property reassessment fund. The county treasurer shall deposit all collections resulting from the property taxes that the county is required to levy under this section in the county's property reassessment fund.

(b) With respect to a general reassessment of real property that is to commence on July 1, 2007, and each fourth year thereafter, the county council of each county shall, for property taxes due in the year that the general reassessment is to commence and the three (3) years preceding that year, levy against all the taxable property in the county an amount equal to one-fourth (1/4) of the estimated cost of the general reassessment.

(c) The department of local government finance shall give to each county council notice, before January 1 in a year, of the tax levies required by this section for that year.

(d) The department of local government finance may raise or lower the property tax levy under this section for a year if the department determines it is appropriate because the estimated cost of a general reassessment, including a general reassessment to be completed for the March 1, 2002, assessment date, has changed.

(e) If the county council determines that there is insufficient money in the county's reassessment fund to pay all expenses (as permitted under sections 28.5 and 32 of this chapter) relating to the general reassessment of real property commencing July 1, 2000, the county may, for the purpose of paying expenses (as permitted under sections 28.5 and 32 of this chapter) relating to the general reassessment commencing July 1, 2000, use money deposited in the fund from the tax levy under this section for 2000 or a later year.

$374,490.00 property tax levy to be deposited in the Property Reassessment Fund (the Fund). The following month, Walters recommended that six full-time employees in his reassessment office be paid from the Fund. The Council, however, approved an appropriation from the Fund to compensate only five full-time employees. Walters demanded an additional appropriation, which the Council refused.

In December 2003, Walters filed a complaint for declaratory judgment and an action in mandamus seeking "to compel the Council's appropriation of funds from the property assessment fund ... upon the recommendation of the assessor." *Appellant's Appendix* at 37. Walters subsequently filed a motion for summary judgment wherein he argued that pursuant to I.C. § 6–1.1–4–28.5, (West, PREMISE through 2004 2nd Regular Sess.), the Council is statutorily required to appropriate the funds that the assessor recommends. The Council disagreed with Walters's interpretation of the statute and filed a cross motion for summary judgment. The trial court granted the Council's motion after a hearing, and Walters appeals.

Summary judgment is appropriate where the designated evidentiary material shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *State Auto Ins. Co. v. Shannon,* 769 N.E.2d 228 (Ind.Ct.App.2002), *trans. denied;* Ind. Trial Rule 56(C). In the instant case, the construction of a statute is at issue. Because the relevant facts are not in dispute, the construction of the statute is a pure question of law for which disposition by summary judgment is particularly appropriate. *Id.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.*

■ Walters contends that the trial court erred in its interpretation of I.C. § 6–1.1–4–28.5, which provides as follows:

(a) Money assigned to a property reassessment fund under section 27.5 of this chapter may be used only to pay the costs of:

(1) the general reassessment of real property, including the computerization of assessment records;

(2) payments to county assessors, members of property tax assessment boards of appeals, or assessing officials under IC 6–1.1–35.2;

(3) the development or updating of detailed soil survey data by the United States Department of Agriculture or its successor agency;

(4) the updating of plat books; and

(5) payments for the salary of permanent staff or for the contractual services of temporary staff who are necessary to assist county assessors, members of a county property tax assessment board of appeals, and assessing officials.

(b) All counties shall use modern, detailed soil maps in the general reassessment of agricultural land.

(c) The county treasurer of each county shall, in accordance with IC 5–13–9, invest any money accumulated in the property reassessment fund until the money is needed to pay general reassessment expenses. Any interest received from investment of the money shall be paid into the property reassessment fund.

(d) *An appropriation under this section must be approved by the fiscal body of the county after the review and recommendation of the county assessor.* However, in a county with an elected township assessor under IC 36–6–5–1 in every township, the county assessor does not review an appropriation under

this section, and only the fiscal body must approve an appropriation under this section.

(emphasis added). Specifically, Walters contends that the statute mandates the Council to approve his recommendation for funds. The Council, on the other hand, argues that the statute requires the Council's approval for the appropriation.

■ Where, as here, a statute has not been previously construed, the express language of the statute and the rules of statutory construction apply. *Koppin v. Strode,* 761 N.E.2d 455 (Ind.Ct.App.2002), *trans. denied.* The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Bailey v. Holliday,* 806 N.E.2d 6 (Ind.Ct.App.2004). The best evidence of legislative intent is the language of the statute itself. *Id.* All words must be given their plain and ordinary meaning unless otherwise indicated by the statute. *Id.*

■ Further, it is just as important to recognize what the statute does not say as it is to recognize what it does say. *Id.* We are required to determine and apply the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* In so doing, we consider the objects and purposes of the statute as well as the effects and consequences of such interpretation. *Id.*

Keeping these principles in mind, the Council's interpretation of the statute is not only reasonable, but also gives effect to the intent of the legislature in enacting the statute. According to the plain and ordinary meaning of the language of the statute, the assessor makes a recommendation to the Council for an appropriation from the Fund, and the Council, which is the county's fiscal body,[3] determines whether to approve and make the recommended appropriation. There is no statutory requirement that the Council simply rubber-stamp the assessor's recommended appropriation. Indeed, such would lead to an absurd result, making the Council's approval superfluous. *See State v. Evans,* 810 N.E.2d 335, 337 (Ind.2004) ("[w]e presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results").

In *Snider v. State ex. rel. Leap,* 206 Ind. 474, 190 N.E. 178 (1934), our supreme court explained the purpose of the County Reform Act of 1899, which established a system for appropriations of county funds by the county council, as follows:

> The evident purpose of the act was to create a body to act as a check on the business of the county and including the expenditures made by all county officers. The power of ... making appropriations was given exclusively to the county council and the intent of the act was to place limits and checks upon payments out of the treasury.... [T]he Legislature evidently thought when it created the body known as the county council, and clothed it with certain powers, that the exercise of those powers would be beneficial to the general public and especially to the taxpayers in providing a check on the expenditure of public money.

*Id.* at 180. Thereafter, our supreme court noted that this system "should not be set aside nor curtailed except by a statute which clearly shows such intention of the legislature." *Bd. of Comm's of Allen County v. State ex rel. Lockhart,* 216 Ind. 125, 23 N.E.2d 494, 498 (1939) (holding that the county council was acting within

3. *See* Ind.Code Ann. § 36-2-3-2 (West, PREMISE through 2004 2nd Regular Sess.).

its powers in fixing Lockhart's salary at a smaller amount than the amount requested by the county agricultural agent in the official estimate which he filed).

Here, we cannot say that I.C. § 6–1.1–4–28.5 clearly shows an intention by the legislature to eliminate the county council's historic discretion in county fiscal matters. *See also Warrick County Com'rs v. Warrick County Council,* 706 N.E.2d 579 (Ind. Ct.App.1999), *trans. denied,* (holding that county commissioners did not have the power to compel the county council to appropriate funds to pay executive director's salary). The trial court did not err in granting the Council's summary judgment motion.

Judgment affirmed.

BAKER, J., and SHARPNACK, J., concur.