FILED

Sep 18 2019, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Kevin S. Smith
Church, Church, Hittle & Antrim
Fishers, Indiana

Theodore F. Smith, Jr.
Theodore F. Smith, Jr., P.C.
Anderson, Indiana

ATTORNEYS FOR APPELLEES

Jonathan W. Hughes
Kristina K. Wheeler
Christina M. Bruno
Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Happy Valley LLC,

*Appellant-Defendant/Counterclaim Plaintiff,*

v.

Madison County Board of Commissioners, et al.,

*Appellees-Plaintiffs/Counterclaim Defendants.*

September 18, 2019

Court of Appeals Case No.
18A-CC-2581

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1710-CC-9988

**Bailey, Judge.**

# Case Summary

In order to provide housing for minimum security jail detainees, the Madison County Board of Commissioners ("the Commissioners") executed a four-year lease ("the Lease") to occupy property owned by Max Howard ("Howard") and managed by Happy Valley, LLC ("Happy Valley"). The Madison County Attorney notified Howard in writing that the Lease was to be terminated two years early, pursuant to Section 6 of the Lease, a provision regarding funds availability. The Commissioners and the Madison County Community Corrections Advisory Board (at times, collectively referred to as "Madison County") sought a declaratory judgment that the Lease was effectively cancelled. Happy Valley counterclaimed for unpaid rent, and requested judicial review as an aggrieved party under the Indiana Public Purchasing Act, Indiana Code Section 5-22-1-0.1 et seq. ("the Purchasing Act"). The trial court issued a declaratory judgment in favor of Madison County. Happy Valley appeals, presenting a single, consolidated issue: whether the declaratory judgment is contrary to law.[1] We affirm.

# Facts and Procedural History

Beginning in 1999, Happy Valley leased to Madison County one building to serve as the Madison County Work Release Center and a second building to

---

[1] We held oral argument in this case on August 23, 2019 at Greensburg Community High School. We thank the school for its hospitality and thank the parties for their able oral advocacy.

house minimum security detainees. The final lease for the minimum security facility was executed on December 23, 2014, for a four-year term, with monthly rent of $18,400.00. By this time, the Commissioners had voted to purchase real estate located on Jackson Street in Anderson, to be remodeled to use for a work release facility. In 2015, a feasibility study suggested there would be significant cost efficiency if the project was expanded to include housing for minimum security detainees. Madison County decided to proceed with the recommended dual facility expansion.

[3]     On September 22, 2016, the Executive Director of the Madison County Community Corrections Justice Center ("the Executive Director") presented to the Madison County Council ("the Council") an estimated 2017 budget for incarceration alternatives. The Director had included a budget line item for rent pursuant to the Lease; however, the Council "zeroed it out." (Tr. Vol. II, pg. 171.)

[4]     Commissioner John Richwine directed the Madison County Attorney to notify Howard of that budgetary action. On September 30, 2016, the attorney drafted a letter addressed to Howard, as the registered agent for Happy Valley, providing in relevant part:

> Please let this letter serve as notice that Madison County will be terminating the Real Estate lease it entered into with Happy Valley, LLC on or around December 23, 2014 as, pursuant to section 6 of that lease, the Commissioners of Madison County have determined that funds are not available to support the continued performance of the lease.

(App. Vol. II, pg. 63.) On December 19, 2016, Howard drafted a letter to Madison County stating in part: "Happy Valley LLC does not accept the cancellation of the December 23, 2014 lease." *Id.* at 65.

[5] Madison County continued to house detainees at Happy Valley's facility until late 2016. After December of 2016, Madison County made no additional payments pursuant to the Lease. On December 22, 2016, Madison County filed a declaratory judgment complaint naming Happy Valley as the defendant. Madison County sought a declaration that the Lease was cancelled pursuant to the September 30, 2016 attorney letter.

[6] On February 15, 2017, the Commissioners passed a Resolution to confirm that funds had not been appropriated for the Lease or, alternatively, to cure any defect for alleged non-compliance with the Indiana Open Door Law, Indiana Code Section 5-14-1.5-1 et seq. Specifically, the Resolution included language that "owing to the purchase of a new Madison County Community Correction Center, that funds are neither appropriated nor available for the continued performance of the Real Estate Lease with Happy Valley, LLC executed on December 23, 2014." *Id.* at 88. Madison County then filed an amended complaint, seeking a declaration that the Lease was cancelled pursuant to either the attorney letter or the Resolution.[2]

---

[2] Indiana Code Section 36-1-4-16 provides that a governmental unit may ratify an action of the unit or its officers or employees "if that action could have been approved in advance."

[7] On March 2, 2017, Happy Valley filed a counterclaim. Happy Valley, claiming entitlement to unpaid rent, requested judicial review of the funding decision under Indiana Code Section 5-22-19-2.[3] Happy Valley articulated as affirmative defenses: (1) Madison County was not entitled to cancellation of the Lease because it had not acted in good faith as required by Indiana Code Section 5-22-3-1; (2) preconditions of cancellation (specific request to the Council for funding and a written determination) were not met; and (3) the September 30, 2016 letter was non-compliant with the Open Door Law. Madison County responded to the counterclaim and raised as affirmative defenses: estoppel, unclean hands, failure to state a claim upon which relief could be granted, and frivolity.

[8] The trial court conducted a two-day hearing on April 11 and 12, 2018. On September 27, 2018, the trial court issued its Findings of Fact, Conclusions, and Judgment, finding in favor of Madison County. The court concluded that a public meeting was not necessary to cancel the Lease or authorize the September 30, 2016 letter (an administrative act) and accordingly, there was no violation of the Open Door Law. The trial court treated the affirmative defense of failure to act in good faith as a free-standing tort claim and observed that

---

[3] Indiana Code Section 5-22-19-2 provides that a person aggrieved by a determination under the Purchasing Act may file a petition for judicial review. The review is limited. Relief may be granted only if a person has been substantially prejudiced by a determination that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence."

Happy Valley had failed to file a timely Notice of Tort Claim. The court found this omission to be fatal to Happy Valley's defensive claim of bad faith.[4] Observing that the Council and Commissioners are different branches of local government, the trial court found it "clear the County Council refused to appropriate funding for the 2015 Lease." Appealed Order at 26. Happy Valley now appeals.

# Standard of Review

Madison County sought a declaratory judgment that its contract with Happy Valley was cancelled as of December 2016. Indiana's Declaratory Judgment Act provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

I.C. § 34-14-1-2.

---

[4] The trial court found laches applicable because eighty days lapsed before Howard responded to the county attorney's letter. Madison County did not, in its pleadings or argument before the trial court, raise laches or failure to file a Notice of Tort Claim. We need not address the affirmative defense of laches in disposing of this appeal.

[10] The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Trial Rule 52, we first determine whether the evidence supports the findings and then whether findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

[11] Here, the salient facts were not in dispute. Madison County and Happy Valley entered into the Lease, having a stated four-year term; Madison County purchased property for housing of minimum security detainees and moved the detainees; rent was paid for days that detainees were housed; thereafter, Madison County paid no additional rent to Happy Valley. A 2017 budget was presented to the Council including future payments under the Lease but the Council deleted that item. Two actions were taken to clarify the County's position that rent was not due for the final two years of the Lease term: issuance of a Madison County attorney letter to Howard and the Commissioners' adoption of a Resolution.

[12] Happy Valley alleges that Madison County violated the Purchasing Act and the Open Door Law. Madison County denies any statutory violation and maintains that the Lease was properly cancelled. Statutory interpretation is

reviewed de novo as it presents a pure question of law. *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010). Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). Cases that present mixed issues of fact and law are reviewed under an abuse of discretion standard. *Daisy Farm Ltd. P'ship v. Morrolf*, 886 N.E.2d 604, 606 (Ind. Ct. App. 2008), *trans. denied*.

# Discussion and Decision

## Cancellation of Public Purchasing Contracts

[13] "[S]tates and local governments have a legitimate interest in their own efficient and effective operation." *City of Indianapolis v. Armour*, 946 N.E.2d 553, 560 (Ind. 2011). In 1899, the Indiana Legislature enacted the County Reform Act and thereby established a system for appropriations of county funds by the county council.[5] The power of making appropriations was given exclusively to the county council with the apparent intent that the exercise of powers by the county council would benefit taxpayers by providing a check on the expenditure of public money. *Warrick Cty. Comm'rs v. Warrick Cty. Council*, 706 N.E.2d 579, 580 (Ind. Ct. App. 1999) (citing *Snider v. State ex rel. Leap*, 206 Ind. 474, 190 N.E. 178, 180 (1934)).

---

[5] Black's Law Dictionary defines "appropriation" to include "a legislative body's or business's act of setting aside a sum of money for a specific purpose" and "the sum of money so voted." (11th Ed. 2019).

In an Indiana County not having a consolidated city, such as Madison County, the county council is the "fiscal body." Ind. Code § 36-1-2-6. The fiscal body is required to hold a regular meeting annually "to adopt the county's annual budget and tax rate" and may hold special meetings. I.C. § 36-2-3-7(b)(2). Monies for contracts will be appropriated annually. "There are good public policy reasons for requiring municipalities to appropriate all necessary funds before entering into contracts," among them, enabling public comment and involvement, "shedding needed sunlight onto municipalities as they decide how to spend their funds," and preventing "one administration from binding the next administration in perpetuity." *City of Lawrenceburg v. Franklin Cty.*, No. 19A-PL-263, slip op. at 13 (Ind. Ct. App. Aug. 28, 2019).

The county commissioners function as the executive branch of local government and execute the directives of the fiscal body. I.C. § 36-2-2-2. Accordingly, county commissioners enter into contracts with vendors in furtherance of local government purposes and objectives. Nonetheless, "money may be paid out of the treasury only under an appropriation made by the fiscal body, except as otherwise provided by law." I.C. § 36-2-5-2(b).

Pursuant to Indiana Code Section 5-22-1-1, the Purchasing Act is, in general, applicable to "every expenditure of public funds by a governmental body." The act specifically defines a "purchase" to include "lease" or other acquisition. I.C. § 5-22-2-24(a). It provides protection to taxpayers in that, when the fiscal body determines in writing that funds are unavailable, a contract may be

cancelled.  It protects parties willing to contract with a governmental body by requiring good faith in the performance of all public contracts.

[17]   The good faith requirement, Indiana Code Section 5-22-3-1, provides:

> All parties involved in the negotiation, performance, or administration of contracts under this article shall act in good faith.

[18]   Indiana Code Section 36-1-10-5(2) prescribes a "procedure" to "be followed whenever a lease does not contain an option to purchase," that is, [t]he lease must provide that the lease is subject to annual appropriation by the appropriate fiscal body."  The enforcement mechanism is found in Indiana Code Section 5-22-17-5, which provides:

> (a) When the fiscal body of the governmental body makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of a contract, the contract is considered canceled.

> (b) A determination by the fiscal body that funds are not appropriated or otherwise available to support continuation of performance is final and conclusive.

[19]   Here, the Lease was in-artfully drafted; Section 6.01 referenced a power of cancellation in the Commissioners as opposed to the Council.[6]  Section 6.01

---

[6] Because the Commissioners were not empowered in this instance to cancel the Lease, their attempts to do so are not relevant to disposition of this controversy.  We have no reason to disagree with the trial court's determinations that the September 30, 2016 letter was an administrative act not encompassed by the Indiana

does not accomplish what it purports to accomplish. But despite this shortcoming, and the evidentiary focus at the hearing upon the conduct of the Commissioners, we must acknowledge that a public contract is invalid in the absence of an appropriation of "funds on hand." *See Union Sch. Tp. of St. Joseph Cty. v. Moon*, 162 N.E. 61, 87 Ind. App. 536 (1928). The Purchasing Act requires that the determination as to lack of appropriation or unavailability of funds be made in writing and in good faith by the fiscal body, here the Madison County Council. Because it is the Council's conduct that is relevant, we look to the trial court's findings of fact and conclusions thereon in this regard.

[20] The trial court entered findings of fact as follows. The Council determined it was feasible to construct a minimum security facility on the Jackson Street property purchased by the county. At a public meeting on September 22, 2016, the Executive Director presented to the Council a budget inclusive of $220,800 in future Lease payments but the Council "voted to remove it." Appealed Order at 10. The findings have evidentiary support. The trial court ultimately concluded that the Council had made a determination, as a matter of public record, that additional payments under the Lease would not be made. The response to the budgetary request, albeit minimalist, made plain the Council's funding decision: consistent with Indiana Code Section 5-22-17-5, "funds are

Open Door Law or that the February 15, 2017 Resolution commemorating a historical event was not a violation of the Open Door Law. *See Lake Cty. Trust Co. v. Advisory Plan Comm'n*, 904 N.E.2d 1274, 1279 (Ind. 2009) (recognizing that the Open Door Law has as its objective assurance that government business will be conducted openly in order that the general public may be fully informed, but clarifying that administrative actions taken by delegated representatives of governing bodies are not subject to the Open Door Law).

not appropriated or otherwise available to support continuation of [contract] performance."

## Good Faith

Happy Valley alleged, as an affirmative defense, that Madison County could not obtain declaratory relief because it had sabotaged its own contract, thereby failing to comply with the good faith requirement of Indiana Code Section 5-22-3-1. As we have previously stated, the Purchasing Act, made applicable to a political subdivision, I.C. § 5-22-2-13(4), embodies a good faith requirement. "All parties involved in the negotiation, performance, or administration of contracts under this article shall act in good faith." I.C. § 5-22-3-1.

Rather than directly address bad faith on the part of Madison County in creating its own budgetary shortfall, the trial court concluded that Happy Valley was required to file a tort claim notice and failed to do so. Because the instant dispute arises from a contract and not injury or death of a person or damage to property, it is not a tort claim.[7] Happy Valley was permitted to raise a good faith argument notwithstanding the lack of a Tort Claims Notice. The court went on to say that the "good faith claim still fails for other reasons." Appealed Order at 24. The "other reasons" were: Howard knew of the Jackson Street

---

[7] Indiana Code Section 34-13-3-8, a provision of the Indiana Tort Claims Act, provides that, generally, a claim against a political subdivision is barred unless notice is filed within 180 days after a loss occurs. Compliance with the notice provision of the Indiana Tort Claims Act is a condition precedent to filing a tort suit against a qualified political subdivision. *Weaver v. Elkhart Cmty. Sch. Corp.*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018). A "loss" is "injury or death of a person or damage to property." I.C. § 34-6-2-75.

property purchase; there were no plans to include the minimum security facility when the Lease was executed; the Council (as opposed to the Commissioners) decided to fund the new minimum security facility; and the Council – not the Commissioners – removed the Lease payments from the budget. Appealed Order at 26.

[23] As for good faith required under the Purchasing Act, there is no specific definition and there are no appellate cases discussing the meaning of "good faith" in this context. We start with the premise that a governmental entity must operate within the bounds of the law and will be held liable for an abuse. For example, the Home Rule Act provides that "[i]f there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." I.C. § 36-1-3-6(a). We find instructional the language of Indiana Code Section 5-22-19-2, which provides for judicial review for a person aggrieved by a determination under the Purchasing Act. Relief is available only if a person has been "substantially prejudiced" by a determination that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence."

[24] At the hearing, Happy Valley asserted that good faith contract performance by a governmental subdivision should be nothing less than that required of private contracting parties, and argued that the *Hamlin* doctrine should be adopted as a

good faith standard for public contracts. *See Hamlin v. Steward*, 622 N.E.2d 535, 540 (Ind. Ct. App. 1993). A doctrine which came to be known as the *Hamlin* doctrine was discussed in *Aquasource, Inc. v. Wind Dance Farm, Inc.*, 833 N.E.2d 535 (Ind. Ct. App. 2005). Distilled to its essence, the doctrine provides that a party to a contract may not rely on a failure of a condition precedent to excuse that party's nonperformance where the party's inaction caused the failure and there exists an implied obligation to make a reasonable and good faith effort to satisfy the condition. *See id*. at 539. A good faith effort is what a reasonable person would consider a diligent and honest effort under the same facts and circumstances. *Id.*

[25] This doctrine does not squarely fit with the instant circumstances, having arisen in the context of non-performance of a condition precedent in a contract between private parties. However, it evinces a general proposition that a party to a contract should make a reasonable good faith effort to avoid failure of the contract's purpose and a party should not sabotage one's own contract. The trial court entered findings and conclusions thereon, specifically finding the *Hamlin* doctrine inapplicable to cancellation of the Lease.

[26] The trial court observed that the Council had changed course based upon the feasibility study. The Council, not the Commissioners, were positioned by law to decide whether or not to appropriate funds to continue the lease for another year. Ultimately, the trial court concluded that there was "no intent to sabotage the 2015 Lease with Happy Valley by either the Commissioners or the County Council. All decisions were based on financial reasons – what was in the best

economic interest of the County and its citizens." *Id.* at 28-29. Our review of the evidence reveals uncontroverted testimony that taxpayers stood to benefit financially from the consolidation of housing for low-risk detainees. In short, there is ample evidence that economic reality as opposed to personal animus against Howard or Happy Valley motivated the funding decision made by the Council. The trial court did not clearly err in so finding. And – lacking funding – a party simply cannot enforce a provision of a contract that is contrary to law.

# Conclusion

[27] Section 6.01 of the Lease is a nullity. Nonetheless, applicable law provides that the Council is empowered to appropriate county funds and county leases are subject to annual appropriation. Happy Valley cannot bind Madison County to fulfill the Lease without the Council's appropriation of funds. The trial court's findings, conclusions, and order in this regard are not clearly erroneous.

[28] Affirmed.

Baker, J., and Najam, J., concur.