**WEST BEND MUTUAL, Appellant–Defendant,**

v.

**Roger KEATON, Appellee–Plaintiff.**

No. 71A03–0103–CV–65.

Court of Appeals of Indiana.

Sept. 19, 2001.

Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Attorney for Appellant.

Daniel H. Pfeifer, Douglas E. Sakaguchi, Sweeney, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant, West Bend Mutual Insurance Company (West Bend) appeals the trial court's order granting summary judgment in favor of Appellee–Plaintiff, Roger Keaton (Keaton).

We affirm.

### ISSUE

The issue presented is whether the trial court correctly determined that West Bend's Business Auto Coverage policy is an automobile or motor vehicle liability policy subject to the requirements of Uninsured/Underinsured Motorist Coverage under Ind.Code § 27–7–5–2.

### FACTS AND PROCEDURAL HISTORY

Keaton lived in Illinois, but was a partner with Robert Stambolic in Traveler's Plaza Truck Stop located in Remington, Indiana. On September 4, 1997, the partnership purchased, through an independent insurance agent in Illinois, an Indiana commercial insurance policy from West Bend that included coverage for business auto liability, commercial property, commercial crime, general liability and inland marine (the "Policy"). The named insureds under the Policy were: "R & R Partners d/b/a/ Traveler's Plaza Truck Stop, Roger Keaton & Robert Stambolic as partners."[1] The business auto coverage provided liability coverage in a combined single limit of $1,000,000.00 for certain covered autos defined as:

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

West Bend did not offer, nor did Keaton either seek or reject, uninsured motorist coverage.

Keaton was the sole proprietor of another business known as Howard Ridge Shell, a gas station located in Evanston, Illinois. On June 5, 1997, Howard Ridge Shell, by Keaton as its owner, leased a 1997 Porsche 911 Carrera automobile for personal, family and household use from Semersky Enterprises in Highland Park, Illinois. The Porsche was registered and garaged in Illinois, and covered by an Illinois insurance policy issued by State Farm Insurance.

On March 28, 1998, Keaton leased, in his own name, a 1998 Toyota 4Runner automobile from an Illinois dealership. Like the Porsche, the Toyota was registered, and insured by State Farm Insurance, in Illinois. Keaton then provided the Toyota to Michael Duffy for his use as a manager for RMK Enterprises. Duffy garaged the Toyota at his residence in Remington, Indiana, until January, 1999.

On June 3, 1998, Keaton was driving the Porsche on a business trip in St. Joseph

---

1. The named insureds under the Policy were amended by endorsement effective April 9, 1998 to RMK Enterprises of Illinois, Inc. d/b/a Traveler's Plaza Truck Stop.

County, Indiana, when he was struck by an uninsured driver. Keaton suffered physical injuries as a result of the collision for which he received medical treatment. Keaton made a claim against the Porsche's State Farm Insurance policy and was paid the $10,000.00 limit under the medical payment coverage and the $100,000.00 limit under the uninsured motorist coverage.

On May 10, 1999, Keaton filed a complaint for damages against West Bend, alleging that he was injured in a motor vehicle collision with an uninsured driver, that Keaton was insured by West Bend, and that Keaton was entitled to recover from West Bend all damages he could legally recover from the uninsured driver. West Bend denied that Keaton was entitled to recover uninsured motorists benefits under its Policy. The matter was briefed and argued on summary judgment. On January 24, 2001, the trial court entered judgment in favor of Keaton with an Order, which states in pertinent part:

1. Defendant West Bend Mutual Insurance Company insured plaintiff under a commercial package insurance policy (policy number CPD 0263287 00), which was issued to plaintiff with respect to a motor vehicle principally garaged in Indiana;

2. Under Ind.Code 27–7–5–2, defendant had to make available to plaintiff uninsured motorist coverage as part of its commercial package insurance policy;

3. Said insurance policy was in effect at the time of plaintiff's accident with an uninsured motorist on June 3, 1998;

4. Said insurance policy contained a statutorily imposed uninsured motorist coverage provision in the amount of $1,000,000.00, from which plaintiff is entitled to funds for damages sustained in his automobile accident of June 3, 1998.

(Appellant's Appendix at 3.) On appeal, West Bend contests the trial court's finding that the Policy was issued with respect to a motor vehicle principally garaged in Indiana, thereby triggering the requirements of Ind.Code § 27–7–5–2.

### DISCUSSION AND DECISION

In Indiana, an automobile liability policy issued with respect to any motor vehicle registered or principally garaged in Indiana shall include uninsured motorist benefits, unless such benefit is expressly rejected, in writing, by the insured. Ind. Code § 27–7–5–2(b). West Bend argues that it was not required to offer uninsured motorist coverage in the Policy because no Indiana automobiles were listed or scheduled under the Policy, and because the automobile that Keaton was driving when injured was not registered or garaged in Indiana. Keaton counters that West Bend was required to offer uninsured motorist coverage in the Policy because he leased an automobile—the Toyota—that was principally garaged in Indiana. Thus, we are called upon to determine whether the Policy provided uninsured motorists benefits for Keaton's injuries sustained while driving a leased automobile that was registered and garaged in Illinois.

▬ The interpretation of an insurance contract, where the facts are undisputed, is appropriately resolved by summary judgment. *Burkett v. American Family Insurance Group*, 737 N.E.2d 447, 452 (Ind.Ct.App.2000). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lake States Insurance Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 317 (Ind.Ct.App.2001). Ind. Trial Rule 56(C). When reviewing the grant of summary judgment, we apply the same standard applicable in the trial court. *Id.*

▬ While insurers are free to limit the coverage of their policies, such limitations are enforceable only if clearly expressed. *Delaplane v. Francis*, 636

N.E.2d 169, 171 (Ind.Ct.App.1994). If a purported limitation is not clearly expressed, the insured is entitled to coverage. *Id.* These principles dovetail with the specific statutory language of Ind.Code § 27–7–5–2 that imposes uninsured motorist coverage absent a written rejection.

■ Resolution of this dispute requires us to construe the intent of Indiana's uninsured motorist statute in the context of the Policy's contractual language. Certain principles of statutory construction guide our analysis. First, we note that Indiana holds to the majority view that because the uninsured motorist statute is remedial in nature, we must liberally construe the statute in favor of the insured. *Capps v. Klebs,* 178 Ind.App. 293, 382 N.E.2d 947, 951 (1978). The main purpose of the uninsured motorist statute is to place an injured insured "in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the financial responsibility act." *Id.* "Persons defined as 'insureds' under the liability section of an insurance policy are those for whom the legislature intended uninsured motorist benefits." *Connell v. American Underwriters, Inc.,* 453 N.E.2d 1028, 1030 (Ind.Ct.App.1983).

In *United National Insurance Co. v. DePrizio,* 705 N.E.2d 455 (Ind.1999), our supreme court was called upon to determine whether a commercial umbrella liability insurance policy was an automobile liability policy subject to the uninsured motorist statute. United National argued that its umbrella policy was not an automobile liability policy as contemplated by Ind.Code § 27–7–5–2 because it combined several different types of liability insurance into a single policy. Our supreme court disagreed, holding:

> [w]hat is dispositive is whether the policy provides coverage for loss resulting from liability to third parties for bodily injury, death or property damage arising from the ownership, maintenance or use of a motor vehicle. We see nothing in the statute suggesting that a policy which provides such coverage should escape the reach of the statute merely because it depends on a primary policy or covers additional types of liability.

*Id.* at 459. The *DePrizio* court relied, in part, on the remedial objective of the statute: to provide financially responsible victims with compensation for injuries suffered through the wrongful conduct of irresponsible motorists. *Id.*

■ Here, the undisputed facts are that Keaton was an insured under the Policy, and the Policy provided automobile liability coverage for any automobile leased by Keaton, regardless of where it was registered or garaged. Considering that Keaton purchased an Indiana policy for his Indiana business, there was every reason to anticipate coverage of an Indiana vehicle. Indeed, one such leased vehicle was garaged in Indiana for a period of time. The fact that Keaton chose to lease in Illinois did not negate the Policy's potential coverage. West Bend's analysis presupposes that Keaton, and the other insureds under the Policy, never intended to lease or garage an Indiana automobile, and that West Bend wrote the Policy with that intention in mind. There is no evidence to support such a limitation, nor can one be inferred from the undisputed facts. Likewise, it does not matter that there is no Indiana automobile listed under the Policy, as West Bend argues, because there is no requirement that covered automobiles be listed.

Our analysis is supported by a recent decision from the Florida Court of Appeals that is almost directly on point: *Hartford Insurance Company of Illinois v. Levy,* 758 So.2d 1145 (Fla.Dist.Ct.App.2000). There, Hartford had issued a commercial general liability insurance policy in Illinois

to an Illinois company, Group III, which provided automobile liability coverage for hired autos and nonowned autos. *Id.* at 1146. Like here, the policy there did not provide uninsured motorist benefits. An employee of Group III went to Florida on company business and while she was there, she rented an automobile that was involved in an accident. *Id.* Group III and its employee claimed uninsured motorist benefits from Hartford on the basis of Illinois' uninsured motorist statute, that is, in all relevant respects, identical to Indiana's, but Hartford denied the claims on the basis that the automobile involved in the accident was neither registered nor garaged in Illinois. *Id.* On appeal, the Florida court found this fact irrelevant for several reasons: 1) there was no dispute that had the employee been at fault, the policy would have provided liability coverage for the Florida accident; 2) the policy did not distinguish between Illinois and non-Illinois automobiles; and 3) the coverage for hired autos was worldwide, "which necessarily means that Hartford was writing coverage for any hired auto or nonowned auto which is registered or principally garaged in Illinois." *Id.* 1147. We agree with that decision.

Because Keaton was an insured under the Policy, and because the Policy provided automobile liability coverage for any automobile leased by Keaton, West Bend was required to offer uninsured motorist coverage as part of the Policy. *See Id.* Thus, we conclude that the trial court properly granted Keaton's Motion for Summary Judgment.

Affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.