**STATE AUTO INSURANCE COMPANIES, Appellant–Defendant,**

v.

**William SHANNON, Appellee–Plaintiff.**

No. 18A02–0111–CV–747.

Court of Appeals of Indiana.

June 4, 2002.

Josef Musser, Michael D. Conner, Spitzer Herriman Stephenson Holderead Musser & Conner, LLP, Marion, IN, Attorneys for Appellant.

James A. Schafer, Painter & Schafer, Muncie, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

State Auto Insurance Companies (State Auto) appeals the trial court's entry of summary judgment in favor of William Shannon on his declaratory judgment complaint. State Auto presents two issues, which we consolidate as follows: whether IC 27–7–5–2, as amended in 1994, required State Auto to offer Shannon, at the time of his policy's renewal in 1996, underinsured motorist (UIM) coverage in an amount at least equal to his policy's bodily injury limits of liability, even though Shannon had rejected in writing such UIM coverage in 1990.

We affirm.

## FACTS AND PROCEDURAL HISTORY

State Auto continuously provided motorist insurance to Shannon from December 6, 1990 to August 23, 1999, when he was involved in an automobile accident with Margaret Coleman. Coleman was insured with State Farm Insurance Company (State Farm), who tendered to Shannon $50,000, Coleman's policy limits. Shannon requested that State Auto provide UIM coverage for his injuries and damages exceeding those paid by State Farm. State Auto denied coverage, asserting that Shannon had no UIM coverage on the day of the accident because he had rejected UIM coverage on December 6, 1990, when as part of his application for insurance Shannon executed an "Indiana Uninsured Motorists Option Form" that stated in pertinent part:

REJECTION OF UNINSURED/UN-DERINSURED MOTORISTS COVERAGE (Bodily Injury and Property Damage)

I the undersigned, the named insured in the liability insurance policy issued by or being applied for through a company indicated above, reject Uninsured Motorists, including Underinsured Motorists coverage, in its entirety.

The rejection shall be binding upon every insured to whom such policy or endorsement provisions apply while such policy is in force and shall continue to be binding on a continuing basis to all renewals or policy replacements in addition to the current policy and applies to all additional or replacement vehicle(s) under this policy.

DO NOT SIGN THIS AGREEMENT TO REJECT UNTIL YOU READ AND UNDERSTAND IT.

| 12/6/90 | /s/ William R. Shannon |
|---|---|
| Date | Signature of applicant or named insured |

*Appellant's Appendix* at 65. The UIM coverage available to and rejected by Shannon was up to $100,000 per person and $300,000 per accident, which was the same as his policy's liability limits for bodily injury.

After State Auto denied Shannon's request for UIM coverage, Shannon filed with the trial court a declaratory judgment complaint seeking a determination (1) that Shannon's rejection of UIM coverage in 1990 was not applicable to his policy, which was renewed after January 1, 1995, because of 1994 amendments to IC 27–7–5–2, and (2) that State Auto make available to him UIM coverage in the amount of his policy's liability coverage. Each party filed a motion for summary judgment. Following a hearing, the trial court entered summary judgment in favor of Shannon, finding that the 1994 amendments to IC 27–7–5–2 increased the minimum limits of UIM coverage that an insurer could provide and required State Auto to offer Shannon such UIM coverage upon renewal of his policy after January 1, 1995. State Auto now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

 State Auto urges us to reverse the trial court's entry of summary judgment in Shannon's favor and enter summary judgment for State Auto. An appropriate disposition of a case by summary judgment occurs when the evidence establishes that there exists no designated issue of material fact and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Western Reserve Mut. Cas. Co. v. Holland,* 666 N.E.2d 966, 968 (Ind.Ct.App.1996). When reviewing a trial court's denial on a motion for summary judgment, the appellate court undertakes the same inquiry as the trial court, and this standard of review will not change when there are cross-motions for summary judgment. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.,* 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *trans. denied* (1997). The reviewing court must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Interpretation of a statute presents a pure question of law for which disposition by summary judgment is particularly appropriate. *Indiana State Teachers Ass'n v. Bd. of Sch. Comm'rs of City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct.App. 1998). Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Indiana Family & Soc. Serv. Admin. v. Radigan,* 755 N.E.2d 617, 620 (Ind. Ct.App.2001).

In this appeal, we must determine whether IC 27–7–5–2, as amended effective January 1, 1995, requires an insurer to offer with any policy renewal occurring on or after January 1, 1995, UIM coverage in an amount at least equal to the policy's limits of liability for bodily injury, and not less than $50,000, even if the insured had declined such coverage before the statute's amendment. Because there are no genuine issues of material fact, this appeal presents us with a pure question of law and one of first impression in Indiana.

### II. Indiana's UM/UIM Statute

 Resolution of this dispute requires us to interpret Indiana's uninsured (UM) and UIM statute, IC 27–7–5–2, as amended in 1994. We independently determine as a matter of law a statute's meaning and apply it to the facts of the case at bar. *Skrzypczak v. State Farm Mut. Auto. Ins. Co.,* 668 N.E.2d 291, 295 (Ind.Ct.App.1996). We follow several rules of statutory construction. First, we do not and may not interpret a statute that is facially clear and unambiguous. *Id.* Rather, we give the statute its plain and clear meaning. *Id.* Second, if a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Id.* When doing so, we read a statute as a whole and strive to give effect to all of the provisions. *Id.*

The applicable version of IC 27–7–5–2, as amended effective January 1, 1995,[1] stated:

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the owner-

---

1. The statute was subsequently amended in 1999; however, those amendments are not relevant to this appeal.

ship, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

(1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may

not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(b) The named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

No insured may have uninsured motorist property damage liability insurance coverage under this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal policy in connection with a policy previously issued to the same insured. Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly is-

sued or delivered policies for which the insurer is required to provide the coverages described in this section.

P.L. 116–1994, Sec. 56, eff. Jan. 1, 1995.

■ Among other things, the 1994 amendments increased the minimum UM and UIM coverage limits that an insurer could offer or sell, requiring that they at least meet the policy's liability limits for bodily injury and in no event could UIM coverage be less than $50,000. At the heart of this appeal is the inclusion of the following sentence:

> Insurers must make underinsured motorist coverage available to **all existing policyholders** on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995.

P.L. 116–1994, Sec. 56 (emphasis added), now codified at IC 27–7–5–2(a).

### III. Insurer's Obligation to Make Available UIM Coverage

State Auto maintains that IC 27–7–5–2 did not require it to notify Shannon of the coverage changes or extend a new or renewed offer of UIM coverage, arguing that it had already offered Shannon coverage that exceeded the minimums imposed by IC 27–7–5–2 as amended, and Shannon rejected such coverage in writing. In response, Shannon asserts that the statute requires an insurer to offer to all existing insureds with the policy's first renewal that occurs on or after January 1,1995, UIM coverage that at least meets the insured's limits of liability for bodily injury, and in an amount not less than $50,000, regardless of whether the insured had previously rejected such UIM coverage. Each party's position is reasonable. However, upon careful analysis of the statute, particularly its amendments, we ultimately side with Shannon.

Section (a) of IC 27–7–5–2 requires insurers to automatically provide UIM coverage in an amount equal to the insured's bodily injury liability limits, unless such coverage has been rejected in writing by the insured. The 1994 amendments modified Section (a) by adding the requirement that insurers may not provide or sell UIM coverage in an amount less than $50,000. After specifying this minimum UIM coverage, the legislature inserted the sentence, "Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995[.]" P.L. 116–1994, Sec. 56, now codified at IC 27–7–5–2(a). Section (b) essentially states that the named insured has the right in writing to reject either UM or UIM coverage or both. It continues:

> Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal policy in connection with a policy previously issued to the same insured.

P.L. 116–1994, Sec. 56, now codified at IC 27–7–5–2(b).

■ In reconciling these provisions, we are mindful that Indiana holds to the majority view that because the uninsured motorist statute is remedial in nature, we must liberally construe the statute in favor of the insured. *West Bend Mut. v. Keaton,* 755 N.E.2d 652, 655 (Ind.Ct.App. 2001), *trans. denied* (2002). *See also United Nat. Ins. Co. v. DePrizio,* 705 N.E.2d 455, 459–60 (Ind.1999) (IC 27–7–5–2 is a mandatory coverage, full-recovery, remedial statute). Considering this principle, we observe that the provision requiring insurers to make available the increased UIM coverage to all existing insureds with the

first renewal after January 1, 1995, is mandatory in nature. It does not state that the insurer must make such coverage available to all existing insureds, *except* those who have previously waived UIM coverage that meets or exceeds the $50,000 minimum coverage requirement set by the statute. Thus, it does not carve out an exception for those, like Shannon, who have previously waived UIM coverage in an amount equal to or in excess of $50,000. Rather, it broadly requires that insurers make available the newly increased coverage minimums to *all existing insureds* at the date of their first policy renewal on or after January 1, 1995.

We further observe that the statutory provision stating that an insurer need not offer UIM coverage with a policy renewal if the insured has rejected such coverage in writing is found in section (b), and thus follows the mandatory obligation found in section (a). The sequence of those two provisions leads us to believe that the legislature intended that an insurer need not repeatedly offer the increased UIM coverage with each renewal, but rather must only do so with the initial renewal that occurs on or after January 1, 1995.

State Auto poses several arguments in opposition to our interpretation of the statute. For instance, it argues that "make available" does not mean "offer." *Appellant's Reply Brief* at 4. State Auto suggests that "make available" merely requires the insurer to have the UIM coverage available or accessible for sale and that the statute does not place an affirmative duty upon the insurer to offer the coverage to an insured. *Id.* We reject the notion that the legislature intended the consequence that an insured should or would intuitively know that after January 1, 1995, higher UIM coverage was available for purchase, and that if the insured should so suspect, he could then inquire about its availability. In any event, this court has previously interpreted the UM/UIM statute to require an offer, not mere accessibility to coverage. *See Keaton,* 755 N.E.2d at 656 (insurer who issued Indiana business auto policy that provided coverage for any automobile leased by insured was required to offer UM coverage, even where leased vehicle involved in accident was registered and garaged in Illinois); *Hupp v. Canal Ins. Co.,* 654 N.E.2d 901, 903 (Ind.Ct.App.1995), *trans. denied* (1996) (interpreting a former version of IC 27–7–5–2, court observed that statute, as then amended, required insurers to offer UM/UIM coverage equal to the limit of liability for bodily injury upon the first renewal of the policy after December 31, 1987); *Millikan v. United States Fid. & Guar. Co.,* 619 N.E.2d 948, 951 (Ind.Ct.App.1993), *trans. denied* (1994) (because UIM coverage was not required until after 1987 amendments, insurer on 1985 policy was not required to offer UIM coverage).

State Auto also urges that interpretation of the statute to require an insurer to offer the UIM coverage at the first renewal after January 1, 1995, would work a hardship upon insurers. For example, it notes that, here, Shannon's 1990 rejection stated that it was "binding on a continuing basis to all renewals," and, consequently, Shannon never paid for such coverage. We acknowledge the permanency of the terms of the 1990 rejection form; however, a policy's provisions do not trump a statutory mandate. *See, e.g., DePrizio,* 705 N.E.2d at 464 (although terms of umbrella policy, which covered excess third-party automobile liability claims, did not provide for UM/UIM coverage, supreme court held that IC 27–7–5–2(a) required the policy to also provide UM/UIM coverage). Here, despite the continuing nature of the terms of the 1990 rejection form, State Auto was not absolved from making an offer of UIM coverage with Shannon's post-January 1, 1995 policy renewal, in conformity with the statute's 1994 amendments.

Additionally, State Auto highlights alleged injustice and absurdity that would result to an insurer if, for instance, a policyholder's first renewal date was February 1, 1995, and the insured had just rejected coverage one week earlier, on January 25, 1995.[2] State Auto asserts that an insurer "should not be penalized for making the [higher UIM] coverage available *earlier* than the statute required." *Appellant's Brief* at 11. Under the trial court's construction of IC 27–7–5–2, and ours, the insurer would nevertheless be required to obtain another rejection on February 1, 1995, the date of the first renewal. We do not dispute a degree of redundancy evident in the proposed fact pattern. However, even though one could conceivably concoct a number of scenarios in which the burden might weigh more heavily on one party than another, it is not the place of this court to judge the wisdom of given legislation. Rather, we merely attempt to interpret that which the legislature has provided. Here, the legislature amended IC 27–7–5–2 in 1994, and in so doing specifically included a blanket requirement that insurers make available to all existing insureds specified minimum UIM coverage at the date of the policy's first renewal that occurs on or after January 1, 1995. In this case, State Auto failed to comply with this requirement.

Affirmed.

MATHIAS, J., and BARNES, J., concur.

---

2. State Auto did not specifically outline, and we are somewhat puzzled, under what circumstances this situation might occur. We observe that if the policy was newly issued on January 25, 1995, it seems unlikely that it would renew one week later, on February 1, 1995. If instead the offer of UIM was made to an existing policy, it likewise seems improbable that the insurer would offer such additional coverage one week before the policy's renewal date. However, not being in the industry, we acknowledge that the proposed situation might arise in some context, and we therefore address State Auto's concern.