OPINION
{¶ 1} Defendant-appellant/cross-appellee, The Insurance Company of the State of Pennsylvania (ISOP), appeals from the judgment of the Jefferson County Court of Common Pleas determining that plaintiff-appellee/cross-appellant, George Randolph, Sr. (Randolph), is entitled to uninsured/underinsured motorists coverage and ruling that Indiana law applies to the disputed insurance policy.
 {¶ 2} The pertinent facts of this case are contained in the "Stipulations of Facts" filed April 13, 1999. ISOP, a Pennsylvania corporation, issued an insurance policy (Policy) to Combined Transport Systems, Inc. (Combined Transport). Combined Transport is an interstate trucking company incorporated in Indiana. Although its principal office is in Indiana, it operates thirty-one terminals in twelve different states. The Policy period commenced on September 30, 1996 and was in effect on March 25, 1997. On January 8, 1997, Lawrence Vasser, acting on behalf of Combined Transport, signed a "Coverage Election" form specifying limits for uninsured and underinsured motorists (UM/UIM) coverages in the amount of $25,000 per person and $50,000 per accident.
 {¶ 3} On March 25, 1997, Randolph was hauling a loaded trailer under a lease agreement with Combined Transport. Randolph's tractor was a "covered auto" and he was an "insured driver" under the liability coverage of the Policy. Randolph was involved in an accident in West Virginia that was caused by the negligence of Nicholas Singer, a resident of West Virginia. The limits of liability for bodily injury under Nicholas Singer's Nationwide Auto Insurance coverage were $50,000, and Nationwide paid those limits to Randolph in July of 1998.
 {¶ 4} Randolph is an Ohio resident and his GMC tractor was registered and garaged in Ohio at the time the Policy was issued and at the time of his accident on March 25, 1997.
 {¶ 5} On September 10, 1998, Randolph filed a complaint in the Jefferson County Court of Common Pleas asking for declaratory judgment, damages and other relief. Randolph demanded a declaratory judgment on two issues: 1) Under R.C. 2721, he was entitled to UM/UIM benefits under the Policy for damages suffered as a result of the accident; and 2) If the UM/UIM coverage of the Policy failed to comply with Ohio law, that the insurer who issued the Policy was nevertheless liable for payment of UM/UIM benefits in conformity with Ohio law. Due to the nature of the claims, the court ordered the claim for declaratory judgment and the claim for damages to be bifurcated with the action for declaratory judgment to proceed first. On May 17, 1999, ISOP moved for summary judgment determining that Indiana law, not Ohio law, applied to the case and, that under Indiana law, it was entitled to judgment as a matter of law.
 {¶ 6} The court reviewed the memoranda filed by the parties, the stipulated facts and exhibits, the arguments of counsel and the deposition of Lawrence Vasser, a Combined Transport employee. On July 13, 1999, in a journal entry that does not specify if it is a judgment on the declaratory judgment or the motion for summary judgment, the court found the state bearing the most significant relationship to the contract of insurance was the state of Indiana, the state in which the named insured, Combined Transport, is located. Therefore, the court determined that the question of UM/UIM coverage was to be determined under Indiana law. It further held that under Indiana law, an insurer must offer UM coverage in limits equal to the limits of liability for bodily injury under the policy. ISOP never offered those limits and, as a result, its election of lower limits was ineffective. The court ruled that Randolph, therefore, was entitled to UM/UIM coverage with limits equal to the liability limit, one million dollars, by operation of law. ISOP filed its timely notice of appeal on July 26, 1999. Randolph filed a cross notice of appeal on July 28, 1999.
 {¶ 7} Each party raises one assignment of error in its brief. Because the determination of Randolph's assignment of error affects the resolution of ISOP's assignment of error, we will address it first. Randolph's assignment of error states:
 {¶ 8} "IT WAS ERROR FOR THE COURT TO HOLD THAT INDIANA LAW APPLIED TO THIS CASE."
 {¶ 9} Although the trial court did not specify whether it entered its judgment on Randolph's declaratory judgment action or ISOP's summary judgment motion, it appears that its ruling was a declaratory judgment. The trial court ruled that Indiana law applied to the case and that Randolph was entitled to UM/UIM coverage with limits of $1 million dollars. Thus, since both of the issues in this case are questions of law, we will review the case de novo. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108; Ohio Bell Tel. Co. v.Pub. Util. Com. (1992), 64 Ohio St.3d 145, 147.
 {¶ 10} Randolph argues that the trial court should have applied Ohio law, not Indiana law, to the case at bar. He contends that the court should apply a balancing test to determine which state bears the most significant relationship to the Policy. Randolph alleges that Ohio has the most significant relationship to the Policy for several reasons. First, the Policy was not made or negotiated in any one state. Second, the performance of the Policy was not limited to any one state. Third, Combined Transport operates more terminals in Ohio than in any other state. Fourth, Ohio law provides that any insurance policy issued with respect to vehicles registered or principally garaged in the state must comply with Ohio UM/UIM laws. Citing, R.C. 3937.18(A). Finally, Randolph contends that the Policy itself recognizes that the law of the state in which an insured's vehicle is registered governs the issue of UM/UIM coverage for that vehicle.
 {¶ 11} Randolph is correct in stating that we must utilize a balancing test to determine whether Ohio or Indiana law applies. The legal basis for recovery under the UM/UIM coverage of an insurance policy is a contract action. Jordan v. State Farm Mut. Auto Ins. Co. (2001),141 Ohio App.3d 670, 674. The claim seeks to determine the insured's contractual right against the insurer. Wilson v. Nationwide Ins. Co.
(Nov. 20, 1997), 8th Dist. No. 71734. The law of the state chosen by the parties to a contract will govern their contractual rights and duties.Ohayon v. Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474, 477. However, when the parties have not chosen the law to govern their contract, we must apply certain factors to determine which state's law has "`the most significant relationship to the transaction and the parties.'" Id., quoting 1 Restatement of the Law 2d, Conflict of Laws (1971) 575, Section 188(1). In deciding choice-of-law questions involving insurance contracts, the court must consider the following factors: (1) the place of contracting; (2) the place of contract negotiations; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Id. at 477; Restatement at 575, Section 188(2).
 {¶ 12} The Policy does not specify which state's law applies to it. The section Randolph references is merely a definition section and only applies to "Owned" "autos." Under the terms of the Policy, Randolph's tractor-trailer is a "Hired" "auto." Applying the choice-of-law test, it is clear that Indiana law applies to the case at bar. First, ISOP issued the Policy to Combined Transport, an Indiana corporation. Second, there is no evidence of where the contract negotiations took place. As to the third and fourth factors, it is unclear as to where the place of performance and the location of subject matter of the Policy are located. The Policy covers vehicles in at least 12 different states, including Indiana, and the vehicles are constantly on the move. Thus, there is no principal location of the insured risk. See, Restatement at 610, Section 193, Comment a. Finally, Combined Transport is an Indiana corporation with its principal place of business in Indiana and ISOP is a Pennsylvania corporation. Although several of the factors are inconclusive, we cannot say that Ohio, or any other state, has a more significant relationship to the Policy than Indiana.
 {¶ 13} Thus, the trial court was correct in ruling that Indiana law applies to the case sub judice. Randolph's assignment of error is without merit.
 {¶ 14} We next turn to ISOP's single assignment of error, which states:
 {¶ 15} "THE TRIAL COURT INCORRECTLY CONCLUDED THAT PLAINTIFFS WERE ENTITLED TO UNDERINSURED MOTORIST COVERAGE WHEN UNDERINSURED MOTORIST COVERAGE HAD BEEN VALIDLY REJECTED PRIOR TO THE INCIDENT GIVING RISE TO PLAINTIFFS' CLAIMS."
 {¶ 16} ISOP argues that under Indiana law, Combined Transport properly limited its UM/UIM coverage. It claims that the trial court improperly concluded that it did not offer Combined Transport UM/UIM coverage in an amount equal to the Policy's liability limits. ISOP points out that when Combined Transport submitted its insurance application, it indicated that it wished to purchase UM/UIM coverage in the amount of the "statutory limits." ISOP also points out that after it issued Combined Transport the Policy, Combined Transport executed a coverage election form that specified that it was selecting the minimum limits.
 {¶ 17} Section 27-7-5-2 of the Indiana Code provides in pertinent part:
 {¶ 18} "(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:
 {¶ 19} "(1) In limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5 * * * for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury * * * resulting therefrom; or
 {¶ 20} "(2) In limits for bodily injury or death not less than those set forth in IC 9-25-4-5 * * * for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury * * * resulting therefrom.
 {¶ 21} "The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. * * *.
 {¶ 22} "(b) The named insured of an automobile or motor vehicle liability policy has the right, in writing, to:
 {¶ 23} "(1) Reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or
 {¶ 24} "(2) Reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected."
 {¶ 25} Section 27-7-5-2(a) provides that an insurer must make the coverage as set out in subsections (1) or (2) available in every motor vehicle liability policy in Indiana that insures motor vehicles registered or garaged in Indiana. The Policy at issue insures motor vehicles that are registered and garaged in Indiana, as Combined Transport has approximately six terminals in Indiana. The Policy also insures vehicles that are registered and garaged in Ohio. The fact that the Policy insures vehicles in Ohio does not take away the fact that it is a policy that insures vehicles registered and garaged in Indiana. Thus, Section 27-7-5-2 applies to the Policy.
 {¶ 26} We find support for this interpretation of Section 27-7-5-2 in the Indiana case of West Bend v. Keaton (Ind.App. 2001), 755 N.E.2d 652. In Keaton, the plaintiff lived in Illinois but was a partner in an Indiana business. The plaintiff's partnership purchased an Indiana commercial insurance policy from the defendant. The plaintiff leased a Porsche in Illinois, which was registered and garaged in Illinois. The plaintiff also leased a Toyota in Illinois, which was registered in Illinois; however, the Toyota was garaged in Indiana. While driving the Porsche in Indiana, an uninsured driver struck the plaintiff's Porsche. He filed a claim against the defendant insurance company alleging that he was injured in an accident with an uninsured driver, that he was insured by the defendant and that he was entitled to collect damages that he could not recover from the uninsured driver. The trial court awarded summary judgment to the plaintiff. On appeal, the defendant contested the trial court's finding that the policy was issued with respect to a motor vehicle principally garaged in Indiana, thereby triggering the requirements of Section 27-7-5-2.
 {¶ 27} The court noted that Indiana maintains the view that because the UM/UIM statute is remedial in nature, it must be liberally construed in favor of the insured. Id. at 655. It also pointed out that "`Persons defined as "insureds" under the liability section of an insurance policy are those for whom the legislature intended uninsured motorist benefits.'" Id. The court found that the policy covered the plaintiff's Porsche. It reasoned:
 {¶ 28} "Here, the undisputed facts are that Keaton was an insured under the Policy, and the Policy provided automobile liability coverage for any automobile leased by Keaton, regardless of where it was registered or garaged. Considering that Keaton purchased an Indiana policy for his Indiana business, there was every reason to anticipate coverage of an Indiana vehicle. Indeed, one such leased vehicle was garaged in Indiana for a period of time. The fact that Keaton chose to lease in Illinois did not negate the Policy's potential coverage. West Bend's analysis presupposes that Keaton, and the other insureds under the Policy, never intended to lease or garage an Indiana automobile, and that West Bend wrote the Policy with that intention in mind." Id.
 {¶ 29} Thus, the court held that the defendant was required to offer UM coverage as part of the Policy.
 {¶ 30} The case at bar is substantially similar to Keaton. Randolph was an "insured" under the policy. The Policy defines "insured" as, among other things, "Anyone else while using with your permission a covered `auto' you own, hire or borrow * * *." Randolph was working when the accident occurred. He was also driving his truck, which he leased to Combined Transport. Thus, his truck was a covered "auto" for liability purposes because the policy provided liability coverage for any "autos." The Policy makes no limitation for liability coverage on where the covered autos must be registered or garaged. The Policy appears to cover other vehicles that are registered and/or garaged in Indiana, as Combined Transport has approximately six terminals in Indiana. Therefore, Section 27-7-5-2 applies to Randolph and the Policy.
 {¶ 31} A case from the Indiana Supreme Court also demonstrates the attitude the Indiana courts and legislature have taken regarding the UM/UIM statute. In United Nat'l Ins. Co. v. DePrizio (Ind. 1999),705 N.E.2d 455, 461 the court explained:
 {¶ 32} "In the years since its inception, Indiana's uninsured/underinsured motorist statute has undergone significant modification. It began requiring insurers to offer uninsured and underinsured coverage. It later mandated insurers to provide this coverage. And, central to our inquiry, the law has moved from imposing limits on such coverage to allowing full recovery. We find that this history of expanding the availability of uninsured and underinsured motorist coverage manifests an intent by our legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists."
 {¶ 33} Since Section 27-7-5-2 applies to the Policy, we must next determine if ISOP complied with the statute's provisions. Section 27-7-5-2 specifically requires the insurer to provide UM/UIM limits that are at least equal to the liability limits specified in the bodily injury liability provision of the policy. An insurer may provide UM/UIM coverage with limits lower than the liability limits as long as it offers the full limits. Marshall v. Universal Underwriters Ins. Co. (Ind.App. 1996),673 N.E.2d 513, 516. No evidence on the record exists to demonstrate that ISOP made an offer to Combined Transport of UM/UIM coverage with limits equal to that of the liability limits. Neither the application, the Policy itself, nor the Coverage Election Form even reference the law or the statutory limits required to be offered. (Plaintiff's Exhibits 2 and 3). The parties stipulated that no other documents are pertinent to the application or insurance coverage. The election form signed over three months after the Policy took effect states, in pertinent part:
 {¶ 34} "I/WE ELECT UNINSURED AND UNDERINSURED MOTORISTS COVERAGES WITH A LIMIT OF $25,000 EACH PERSON AND A LIMIT OF $50,000 EACH ACCIDENT AND A PROPERTY DAMAGE LIMIT OF $10,000 PER PERSON AND REJECT ALL OTHER COVERAGES AND LIMIT OPTIONS."
 {¶ 35} Nowhere does the form indicate that ISOP ever offered Combined Transport UM/UIM coverage in amounts equal to its liability coverage. It is axiomatic that without a valid offer, there can be no valid rejection. The election of lower limits standing alone does not establish a valid rejection of the higher limits. The insured must affirmatively indicate in writing that it is its choice not to accept the full limits of UM/UIM coverage. Marshall, 673 N.E.2d at 516. Additionally, the UM/UIM statute requires "an offer, not mere accessibility to coverage." State Auto Ins. Co. v. Shannon (Ind.App. 2002), 769 N.E.2d 228.
 {¶ 36} Thus, since ISOP never made a valid offer, the election of the lower limits is invalid and Randolph has UM/UIM coverage by operation of law up to the limits of the Policy's bodily injury liability limits, or one million dollars.
 {¶ 37} Additionally, even if Combined Transport's election of lower limits was valid, Randolph would still be entitled to UM/UIM coverage by operation of law. The Declarations page of the Policy provides that Combined Transport only purchased UM/UIM coverage of 25,000/50,000/10,000 for "Owned" "autos." The Policy defines "Owned" "autos" as only those autos that Combined Transport owns. (Policy, p. 6). Randolph's tractor-trailer was a "Hired" "auto" under the terms of the Policy. A "Hired" "auto" is one that Combined Transport leases, hires, borrows, or rents. (Policy, p. 6). The Policy does not provide for any UM/UIM coverage for "Hired" "autos." However, the Policy does provide liability coverage with a one million dollar limit for any "autos," which includes Randolph's tractor-trailer. There is no evidence on the record that ISOP ever offered Combined Transport UM/UIM coverage for the "Hired" "autos" for which it provided liability coverage. Thus, ISOP failed to comply with the mandates of Section 27-7-5-2.
 {¶ 38} Accordingly, the trial court was correct in holding that Randolph is entitled to UM/UIM coverage by operation of law with limits of one million dollars. ISOP's sole assignment of error is without merit.
 {¶ 39} For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., concurs in judgment only.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.