**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellant–Plaintiff,**

**v.**

**Vernon STEURY, Personal Representative of the Estate of Esther Steury, Deceased, Ervin Miller and Marie Miller, Parents of Wendy Miller, a Deceased Minor, Appellees–Defendants.**

No. 02A04–0208–CV–398.

Court of Appeals of Indiana.

May 2, 2003.

Transfer Dismissed June 13, 2003.

John F. Lyons, Michael H. Michmerhuizen, Barrett & McNagny, Fort Wayne, IN, Attorneys for Appellant.

Jane E. Malloy, Steele Ulmschneider & Malloy, Fort Wayne, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") appeals the trial court's grant of summary judgment to Vernon Steury, the personal representative of the Estate of Esther Steury, deceased, (the "Estate"), and Ervin Miller and Marie Miller, the parents of Wendy Miller, a deceased minor, (the "Millers"), and the trial court's denial of State Farm's motion for summary judgment. State Farm raises one issue, which we restate as whether the trial court erred by determining that the Estate and the Millers were entitled to underinsured motorist coverage because State Farm did not make underinsured motorist coverage available to the insured by offering the coverage after January 1, 1995 and did not obtain a written rejection of the coverage. Because we conclude that State Farm was required to obtain a written rejection of the coverage, we affirm.

The relevant facts stipulated to by the parties and designated in their summary judgment motions follow. On March 13, 1986, Esther Steury signed an application for State Farm automobile insurance on a 1979 Oldsmobile Delta 88. The application specifically requested uninsured motor vehicle bodily injury and property damage coverage, but rejected underinsured motor vehicle coverage. In 1986, Esther replaced her 1979 Oldsmobile Delta 88 with a 1986 Oldsmobile Delta 88, and insured the vehicle with State Farm. On April 21, 1988, Esther signed a Rejection of Uninsured and Underinsured Motor Vehicle Coverage with respect to the 1986 Oldsmobile Delta 88. State Farm issued a change order with respect to the policy canceling the uninsured motorist coverage and the underinsured motorist coverage.

In 1995, the Indiana general assembly amended Indiana's uninsured and underinsured motorist coverage statute effective January 1, 1995. The amendment added a requirement that insurers "make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995." Ind.Code § 27-7-5-2. State Farm sent Esther a document entitled "Important Information About Underinsured Motor Vehicle Coverage" with the first premium-due notice after January 1, 1995. Appellant's Appendix at 65. The document provided that:

> In accordance with the new Indiana law, we are offering you underinsured motor vehicle coverage (Coverage W) with limits up to your bodily injury liability coverage limits.

> **About Coverage W**

> Coverage W can apply when another driver is at fault in an accident and owes damages for bodily injury to you or your passengers, but does not have enough insurance to pay the damages. Under this coverage, you can recover uncompensated damages up to the difference between your Coverage W limits and the amount you received from the at fault driver, but you can never collect more than the amount of your damages.

> Coverage W is available at limits of $50,000 per person and $50,000 per accident. Higher limits up to, but not exceeding your bodily injury liability coverage are also available.

> **If You Want Coverage W**

> If you want to purchase Coverage W or if you would like higher Coverage W

limits, please contact your State Farm agent.

*Id.* at 65–66, 119. After receiving the document, Esther did not contact State Farm or otherwise notify State Farm of her intent to purchase the underinsured motorist coverage.

On June 9, 2000, Wendy Miller, Esther's sixteen-year old granddaughter, was driving Esther's Oldsmobile Delta 88. Esther was a passenger in the vehicle. They were involved in an accident with Benjamin Sheets due to Sheets's negligence. Both Esther and Wendy died as a result of injuries suffered in the accident. American Family Insurance insured Sheets under a policy containing limits of $25,000 per person. However, damages that the Estate would otherwise be entitled to recover from Sheets exceed $100,000 and the damages that the Millers would otherwise be entitled to recover from Sheets exceed $250,000. Both the Estate and the Millers have settled with American Family for its policy limits of $25,000 with State Farm's express written consent.

On April 17, 2001, State Farm filed a complaint for declaratory relief against the Estate. The Millers were later added as defendants. The Estate and the Millers filed a motion for summary judgment, arguing that the State Farm policy included underinsured motorist coverage because Esther "did not reject the coverage in writing on or after the occasion of the first renewal of her policy that occurred on or after January 1, 1995." Appellant's Appendix at 81. State Farm also filed a motion for summary judgment, arguing, in part, that it made underinsured motorist coverage available to Esther by sending her the document entitled "Important Information About Underinsured Motor Vehicle Coverage." Appellant's Appendix at 105.

The trial court granted the Estate's and the Millers' motion for summary judgment and denied State Farm's motion for summary judgment. Specifically, the trial court relied upon *State Auto Ins. Cos. v. Shannon,* 769 N.E.2d 228 (Ind.Ct.App.2002), *trans. denied,* and held that Esther's 1988 written rejection of the uninsured and underinsured motorist coverage did not operate to reject the coverage after January 1, 1995. Furthermore, the trial court held that "State Farm did not make coverage available to Steury after January 1, 1995 nor did it obtain a written rejection of the coverages from Steury after January 1, 1995." Appellant's Appendix at 11. Thus, the trial court held that the Millers and the Estate were each entitled to judgment as a matter of law in the amount of $75,000. State Farm filed a motion to correct error, which the trial court denied.

The sole issue is whether the trial court erred by determining that the Estate and the Millers were entitled to underinsured motorist coverage because State Farm did not make underinsured motorist coverage available to the insured by offering the coverage after January 1, 1995 and did not obtain a written rejection of the coverage. Our standard of review for a trial court's grant of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002).

The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct. App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

 When a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did here, the method of our review is not changed. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

State Farm argues that the trial court erred because State Farm made the underinsured coverage available to Esther after January 1, 1995, pursuant to Ind. Code § 27–7–5–2, when it provided Esther with the document entitled "Important Information About Underinsured Motor Vehicle Coverage." The Estate and the Millers argue that the document was insufficient to make the coverage available to Esther. Additionally, the Estate and Miller argue that State Farm was required to obtain Esther's rejection of the coverage in writing.

Resolution of this issue requires us to interpret Indiana's uninsured/underinsured motorist statute, Ind.Code § 27–7–

5–2. Ind.Code § 27–7–5–2[1] provides as follows:

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance . . ., the following types of coverage:

(1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability

---

**1.** The statute was also amended in 1999. *See* Pub.L. No. 233–1999, § 8. However, those amendments are not relevant to the issue presented in this appeal.

provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(b) Any named insured of an automobile or motor vehicle liability policy has the right, on behalf of all other named insureds and all other insureds, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

No insured may have uninsured motorist property damage liability insurance coverage under this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal or replacement policy issued to the same insured by the same insurer or a subsidiary or an affiliate of the originally issuing insurer. Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section.

■■■ Our supreme court has held that because of the "remedial nature" of this legislation, the statute "is to be liberally construed." *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 459–460 (Ind.1999). "Moreover, like all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured." *Id.* at 460. Furthermore, the statute "is directed at insurers operating within Indiana and its provisions are to be 'considered a part of every automobile liability policy the same as if written therein.'" *Id.* (quoting *Ind. Ins. Co. v. Noble*, 148 Ind.App. 297, 306, 265 N.E.2d 419, 425 (1970)). "[E]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law." *Id.*

The provision at issue here was added in 1994, effective on January 1, 1995, and provides that:

The uninsured and underinsured motorist coverages must be provided by insur-

ers ... unless such coverages have been rejected in writing by the insured.... Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995.

We recently considered this provision in *State Auto Ins. Cos. v. Shannon*, 769 N.E.2d 228 (Ind.Ct.App.2002), *trans. denied*. In *Shannon*, the insured, Shannon, rejected uninsured and underinsured motorist coverage in 1990. *Id.* at 230. Shannon was involved in an accident with an underinsured motorist in 1999. *Id.* State Auto denied coverage, asserting that Shannon had no underinsured motorist coverage in 1999 because he had rejected the coverage in 1990. *Id.*

In interpreting the 1994 amendment to the statute, we observed "that the provision requiring insurers to make available the increased [underinsured] coverage to all existing insureds with the first renewal after January 1, 1995, is mandatory in nature" and did not "carve out an exception for those, like Shannon, who [had] previously waived [underinsured] coverage." *Id.* at 233–234. Further, in considering the meaning of "make available," we addressed State Auto's suggestion that "make available" merely required "the insurer to have the coverage available or accessible for sale and that the statute [did] not place an affirmative duty upon the insurer to offer the coverage to an insured." *Id.* 234. We rejected "the notion that the legislature intended the consequence that an insured should or would intuitively know that after January 1, 1995, higher [underinsured motorist] coverage was available for purchase, and that if the insured should so suspect, he could then inquire about its availability" and noted that we had previously interpreted the uninsured/underinsured statute "to require an offer, not mere accessibility to coverage." *Id.* Consequently, we held that Shannon's 1990 rejection did not absolve State Auto from making an offer of the coverage with Shannon's post-January 1, 1995, policy renewal. *Id.*

■ In sum, we held in *Shannon* that a pre-January 1, 1995, rejection of uninsured/underinsured coverage is insufficient to meet the requirements of Ind.Code § 27–7–5–2. Rather, an insurer must make the coverage available with the first post-January 1, 1995, policy renewal and the term "make available" requires the insurer to actually offer the coverage to the insured. As no post-January 1, 1995, offer was made by the insurer in *Shannon,* it was unnecessary to address whether Ind.Code § 27–7–5–2 requires a written rejection of the offer. Here, State Farm argues that it made a post-January 1, 1995, offer, but concedes that it did not obtain a written rejection of the offer. Thus, we must now address this issue of first impression.

■ The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703–704 (Ind. 2002). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* at 704. Clear and unambiguous statutory meaning leaves no room for judicial construction. *Id.*

As noted above, the relevant provision of Ind.Code § 27–7–5–2 provides that:

The uninsured and underinsured motorist coverages must be provided by insurers ... unless such coverages have been

rejected in writing by the insured.... Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, *and* on any policies newly issued or delivered on or after January 1, 1995.

I.C. § 27–7–5–2 (emphasis added). Thus, the coverage must be made available on both newly issued policies and the renewal policies. By linking the policies together, the legislature demonstrated an intent that the procedure for making the coverage available be the same for both the newly issued policies and the renewal policies.

First considering only newly issued policies, the statute is clear that "[t]he uninsured and underinsured motorist coverages must be provided by insurers ... unless such coverages have been rejected in writing by the insured." *Id.* Further, the next sentence requires that "[i]nsurers must make underinsured motorist coverage available ... on any policies newly issued or delivered on or after January 1, 1995." *Id.* Thus, interpreting the two sentences together, when insurers make the coverage available on newly issued policies, the insurer must obtain a written rejection of the coverage. We have previously interpreted Ind.Code § 27–7–5–2 to require such a written rejection of underinsured motorist coverage. *See, e.g., Johnson v. AAA Chicago Motor Club Ins. Co.,* 699 N.E.2d 1182, 1185 (Ind.Ct.App.1998) (noting that the insurer did not dispute the fact that it was statutorily required to provide underinsured motorist coverage where the insured did not reject the coverage in writing); *see also Skrzypczak v. State Farm Mut. Auto. Ins. Co.,* 668 N.E.2d 291, 295 (Ind.Ct.App.1996) (holding that because a policy was a "new policy," Ind.Code § 27–7–5–2 required a written rejection of the underinsured motorist coverage).

Now, considering policies renewed after January 1, 1995, the same sentence of Ind.Code § 27–7–5–2 provides that "[i]nsurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995...." I.C. § 27–7–5–2. It would be inconsistent to hold that when insurers make the coverage available on newly issued policies, the insurer must obtain a written rejection of the coverage without also holding that when making coverage available on renewal policies after January 1, 1995, the insurer must also obtain a written rejection of the coverage. The statute clearly and unambiguously requires a written rejection of the uninsured/underinsured motorist coverage for both newly issued policies and post-January 1, 1995, renewal policies. Furthermore, this interpretation comports with our supreme court's direction in *DePrizio* that this statute "is to be liberally construed" and "read in a light most favorable to the insured." *DePrizio,* 705 N.E.2d at 459–460.

Consequently, we need not determine whether the document entitled "Important Information About Underinsured Motor Vehicle Coverage" constituted an offer under Ind.Code § 27–7–5–2 because State Farm was required to obtain Esther's rejection of the uninsured/underinsured motorist coverage in writing. The document made no provision for a written rejection of the uninsured/underinsured motorist coverage, and State Farm did not obtain a written rejection. Because State Farm failed to obtain Esther's written rejection, Esther was entitled to the coverage as a matter of law. *See, e.g., Skrzypczak,* 668 N.E.2d at 295. Thus, the trial court did not err by granting the Estate's and the Millers' motion for summary judgment and

by denying State Farm's motion for summary judgment.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Estate and the Millers.

Affirmed.

KIRSCH, J. concurs.

SULLIVAN, J. concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur in the holding that State Farm is not entitled to rely on the 1988 rejection of underinsured coverage after the new law went into effect in 1995. I further agree that failure to obtain Steury's post–1995 rejection *in writing* renders State Farm liable to both Steury's estate and the Millers.

However, I must respectfully disagree with the majority's conclusion that "we need not determine whether the document entitled 'Important Information About Underinsured Motor Vehicle Coverage' constituted an offer under Ind.Code § 27–7–5–2...." Op. at 472. That document, as quoted by the majority at op. 467, clearly and unmistakably constitutes an offer for such coverage.

I would therefore affirm the granting of the Summary Judgments in favor of the Estate and in favor of the Millers but would do so solely upon the basis that State Farm did not obtain from Steury a written rejection of the offered coverage.